TIMOTHY J. HARTNETT *vs.* WILLIAM N. GODDARD.

Suffolk.   January 11, 12, 1900. — June 19, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Libel — Evidence.*

In an action for libel against a member of an association, who set in motion the machinery of the association which contemplated that a person who did not pay his debts could not buy of members of the association except by paying cash before delivery, if the answer avers that the alleged libellous matter was true, and was published without malice, the defendant may testify to his purpose in forming and carrying on the association.

If the plaintiff, during his examination of the defendant as a witness, opens the

matter of what the latter's intention was in doing the act complained of, which consisted in setting in motion the machinery of an association of which he was a member, his counsel properly is allowed, in the discretion of the judge, to ask him whether he intended that the members of the association should do anything more than was provided by its by-laws.

In an action for libel against a member of an association, who set in motion the machinery of the association which contemplated that a person who did not pay his debts could not buy of members of the association except by paying cash before delivery, if the secretary of the association, who is called as a witness for the plaintiff, identifies several circulars and letters referred to in the declaration, as well as others relating to the process of dealing with the plaintiff through the association, the defendant properly is permitted to examine him upon the practice of the association in regard to arbitration in case of differences, though no evidence has been put in that either party has requested or submitted to arbitration in regard to such differences.

TORT, in three counts, for libel and malicious injury to the plaintiff's business. The answer contained a general denial, and set out that the alleged libellous matter was true, and was published without malice, and also that it was a privileged communication. Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

It appeared that the defendant was a member of the Plumbers' Supply Association of New England, a corporation formed under the laws of this Commonwealth for the purpose, as stated in its certificate of incorporation, " of promoting pleasant relations among its members; discussing, arbitrating, and settling all matters pertaining to the prosperity and promotion of the jobbing plumbers' supply business; and establishing and maintaining a place for social meetings"; that among its by-laws was the following: "Usage and Custom. It shall be the duty of members of this association, in order to promote uniformity and certainty in the usage and custom in the trade, and to conform to the same, to sell only for cash paid before delivery, to customers who have unjustly failed to meet their trade contracts and obligations, and so long as that failure continues "; and that the association had established an elaborate system of notices, letters, and circulars concerning delinquent debtors of members of the association, to compel them to settle their accounts with the members, substantially as follows: (1) A letter to be addressed by the member to his debtor, calling his attention to the unpaid account and notifying him that if it is not paid in ten days it will be referred to the association; (2) a letter to be addressed

by such member to the secretary of the association, calling attention to the fact that a designated debtor of the member is delinquent and has been notified of his delinquency; (3) a letter of the secretary to the delinquent debtor, notifying him that unless he pays up within ten days from date the members of the association will be notified of the same, and in consequence thereof the debtor may be unable to purchase any goods from any of them except for cash before delivery; and (4) such delinquency continuing the time mentioned, and the debtor making no response, a letter from the creditor to the secretary of the association requesting him to notify every member. Thereupon the secretary gives such notice, and the name of such delinquent debtor is entered upon a book of delinquents to be kept by each member for that purpose, who thereafter refuse to deal with the delinquent except for cash before delivery.

It also appeared that the plaintiff was a retail plumber, who had previously traded with the defendant, and had paid his previous accounts with the defendant; and that in November, 1895, he was owing the defendant on a subsequent account a balance of $500 and over, when a question arose between the parties, which formed the basis of the defendant's acts, of which the plaintiff complains.

There was evidence tending to show that the plaintiff had been in his business for many years; that in 1889 he met with reverses which compelled him to compromise with his creditors, and had recovered in part from such reverses at the time he traded with the defendant, with all of which the defendant made himself acquainted by investigation before trading with him; that the plaintiff's total business at the time, and for some time prior to the transactions with the defendant, was about $7,000 or $8,000 a year; and that since the acts of the defendant complained of, the plaintiff's business had dwindled to nothing. There was conflicting testimony as to whether the plaintiff's loss of business was or was not ascribable to the defendant's acts.

The defendant, who was called as a witness by the plaintiff, was asked by his own counsel the following question: "You were one of the original members of the Plumbers' Supply Association, were you?" To which he answered, "Yes."

The defendant was then asked, against the plaintiff's objection, the following questions: " Was there any ulterior purpose on your part in forming the association beyond what was stated in the by-laws and charter? Whether or not, after the association was formed, and down to the time when you sent the notices, which appear in evidence, to Mr. Dupee concerning Mr. Hartnett, from the time Mr. Dupee sent out the other notices to Mr. Hartnett, anything had occurred which had led you to think that what you were doing was illegal or unlawful ? "

Each question was answered in the negative ; and the plaintiff excepted to its admission.

The following question was put to the defendant: " What was your understanding from what you knew of the business of the association and the way in which it was conducted, and the practices of the association and its by-laws, — what would be the course of business in case Mr. Hartnett, in response to this circular sent out by Mr. Dupee [circular exhibited], and the one of similar tenor previously sent, had notified Mr. Dupee that he disputed the account? What would then be the course about sending out any notice to the members of the association ?" This question was objected to by the plaintiff, but was allowed ; and the defendant answered, " I would be notified by Mr. Dupee that the account was disputed, and no notices would be sent out to the members till the account was finally adjusted." The plaintiff excepted.

During the course of the defendant's examination by the plaintiff he was asked if his proceedings, through the association, were not intended to compel the plaintiff to pay the defendant's demand, by depriving the plaintiff of his credit and bringing him into disrepute among other members of the association; and the defendant answered affirmatively.

. His counsel then asked him: " You answered, in response to Mr. Dudley's questions as to what you intended should be understood by the members of the association on receipt of the notice; · whether or not you intended that the members of the association should do anything more than was provided by the by-laws of the association, namely, cease to supply him with goods except for cash." The plaintiff objected to this question, but the judge admitted it. The defendant answered in the negative; and the plaintiff excepted.

John B. Dupee, who was the secretary of the association, was called as a witness for the plaintiff, and identified several circulars and letters referred to in the plaintiff's declaration, as well as others, relating to the process of dealing with the plaintiff through that association. The defendant was then permitted to examine him upon the practice of the association in regard to arbitration between the retail plumbers and the members of the association in case of differences, though no evidence had been put in on either side that either of the parties had requested or submitted to arbitration in regard to such differences; and the plaintiff excepted.

The case was submitted to the jury under instructions not excepted to.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*H. Dudley,* (*S. H. Dudley* with him,) for the plaintiff.

*H. R. Bailey,* for the defendant.

LATHROP, J.    This case in some respects resembles *Weston* v. *Barnicoat,* 175 Mass. 454, and in other respects differs from it. The machinery of the association, which the defendant, who was a member thereof, set in motion, did not contemplate an absolute boycott, as in *Weston* v. *Barnicoat,* but merely that a person who did not pay his debts could not buy of members of the association, except by paying cash before delivery. The bill of exceptions states that when the question arose between the parties, which formed the basis of the defendant's acts, the plaintiff was owing the defendant $500 and over. As we understand the somewhat lengthy declaration, in several counts, the plaintiff complains that what was done amounted to a false, scandalous, and malicious libel.

The answer was a general denial, with an allegation that the alleged libellous matter was true, and was written without malice, and also that it was a privileged communication.

The exceptions state that there was conflicting testimony on the point as to whether the plaintiff's loss of business was or was not ascribable to the defendant's acts. The jury found for the defendant, under instructions to which no exceptions were taken; and the only exceptions are to matters of evidence.

Under the Pub. Sts. c. 167, § 80, the truth of the libellous

matter may be given in evidence, and forms a complete justification, unless malice is shown.   Whether the statement was true, and whether there was malice, were issues proper to be submitted to the jury.   The questions first objected to relate to the purpose of the defendant in forming and carrying on the association, and we see no objection to their admission.   As is said in *Weston* v. *Barnicoat, ubi supra,* the jury might have found that " the whole organization was a mere scheme . . . to enforce colorable claims of the members by a boycott intended to take the place of legal process, and that there was no pretence of any duty about the matter," or they might have found, as is said by the court in the same case, that " the purpose of the association and publication was and was understood to be merely to give information to members concerning the credit of people with whom they might deal."

The last question put to the defendant by his counsel was properly allowed, in the discretion of the presiding judge, as the plaintiff who called him as a witness had opened the matter of what his intention was.

The remaining exception relates to the admission of the testimony of one Dupee, the secretary of the association.   He was called as a witness for the plaintiff, and identified several circulars and letters referred to in the plaintiff's declaration, as well as others relating to the process of dealing with the plaintiff through that association.   The defendant was then permitted to examine him upon the practice of the association in regard to arbitration in case of differences, though no evidence had been put in on either side, that either of the parties had requested or submitted to arbitration in regard to such differences.   We do not think that the last fact stated is of any importance.   The defendant was on trial for starting the machinery of an association, which might be a very unjust association, or which might be a very fair one, intended not to collect debts not due, but merely honest debts.   The machinery of the association was called in question, and we do not see that the plaintiff has any ground of exception to the subject matter of the inquiry.

It also seems to us that the extent of the cross-examination was within the discretion of the presiding judge.   *Jones* v. *Smith,* 121 Mass. 15.   *Commonwealth* v. *Nash,* 135 Mass. 541.   *Barrett* v. *Murphy,* 140 Mass. 133, 143, 144.     *Exceptions overruled.*