CHARLES CONKLIN *vs.* JOHN HOWARD INDUSTRIAL HOME.

Suffolk.    March 16, 1916. — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Witness,* Cross-examination, Direct examination. *Practice, Civil,* Control of cross-examination by judge. *Charity. Corporation,* Charitable.

Where, in an action of tort against a corporation for personal injuries alleged to have been received by the plaintiff while in the employ of the defendant in a wood yard operated by it, the defendant in its answer alleges that it is a charitable cor-

poration and that the wood yard was operated by it in carrying out its charitable purposes, and at the trial the plaintiff calls as a witness the superintendent of the defendant, who was one of its incorporators, and makes inquiry as to the general management of the defendant's enterprises, the witness in cross-examination by counsel for the defendant may be permitted to state the purposes for which the wood yard was established and maintained.

And, where it does not appear that the superintendent, although an employee and a member of the corporation, had shown bias or prejudice in his testimony, the presiding judge was held properly to have ruled that the plaintiff, who had called him as a witness, should not be permitted to cross-examine him.

A charitable corporation, organized "for the purpose of assisting discharged prisoners and others," by furnishing them with a temporary home and employment, to lead honest and useful lives, which maintains for its purposes a lodging and boarding house called a Home, and a wood yard where employment is given to persons needing its help, who are paid something for their work and are given lodging, board and sometimes clothing, and the expenses of which corporation are paid in part from a sale of the wood from the wood yard, in part from the income from invested funds and in part from voluntary contributions, the corporation deriving no profit from its enterprises, cannot be held liable in an action of tort brought by an inmate of its Home and a worker in its wood yard for personal injuries received by him due to a defective condition of a wood chopping machine of which the defendant's superintendent knew or should have known.

TORT for personal injuries alleged to have been received by the plaintiff, while in the employ of the defendant, by reason of an alleged defective condition of a wood chopping machine at which he was set at work without adequate instruction or warning. Writ dated April 25, 1914.

The answer of the defendant as amended, besides containing a general denial, alleged that it was incorporated in the year 1896 under the provisions of Pub. Sts. c. 115, § 4, and the acts in amendment thereof and in addition thereto, "for the purpose of assisting discharged prisoners and others, by furnishing them with a temporary home and employment, to lead honest and useful lives;" that it was a charitable corporation and not a business corporation, and had "engaged in the work of helping those who have been convicted of crime and have served terms of imprisonment to lead them to become honest and useful citizens; that, solely for the purpose of carrying out the charitable objects set forth in its charter of incorporation and not for any private profit of its members or any of them, the defendant maintained at the time of the accident to the plaintiff a Home for discharged prisoners, and in connection with the Home, in order better to assist such discharged prisoners, a wood yard known as the Brookline

Industrial Wood Yard, and that such Home and wood yard were maintained in part by voluntary contributions from the public."

The case was tried before *Raymond, J.*

The superintendent of the defendant, called as a witness by the plaintiff, testified in direct examination: "It is not stipulated when a man comes to the Home as a member that they should get any wages. It is only our pleasure that we allow them to have it. We pay wages, however, from $1.75 to $2 a week with the board and lodging and clothes now and then as it comes in. They do not work in the wood yard in Brookline altogether, a great many of them work in the yard in Brookline. The men don't sleep in Brookline, they sleep at 560 Massachusetts Avenue, Boston; we pay their carfare out and in, and wood that they saw and chop we sell to the public, the wood being sawed and chopped in Brookline by the men."

In cross-examination the superintendent testified that the wood yard was maintained by the defendant "to give the men employment and to give them an opportunity to save a little money so when they do get employment elsewhere they will have something to stay them over;" that it was not operated entirely by inmates of the Home on Massachusetts Avenue, the manager not being an inmate, but that he was the only one that was not in the Home; that the proceeds of the wood sold at the wood yard after the expenses of running the wood yard had been paid, if any proceeds were left, were turned over to the Home in order to defray a part of the expenses; that it, the Home, had some invested funds, the income of those invested funds going for the same purpose; that the income from the funds and the receipts from the wood yard together did not meet the expenses of the Home within $6,000 or $7,000, and that the balance of the Home expenses was met by contributions from the public.

*E. M. Shanley,* for the plaintiff.

*H. W. Brown,* for the defendant.

BRALEY, J. While the only evidence introduced by the defendant was a certified copy of its charter showing that it is a corporation organized under Pub. Sts. c. 115, § 4 for the purpose of assisting discharged prisoners and others by providing them "with a temporary home and employment, to lead honest and useful lives," the plaintiff called the superintendent of the Home,

one of the incorporators as a witness.   It is upon his evidence that the question of the defendant's liability must be decided.

The plaintiff having inquired as to the number of corporators and the general management of the Home in the reception, support and employment of inmates, the superintendent was properly permitted to state on cross-examination the purpose for which the wood yard where the plaintiff, an inmate, while at work with a chopping machine was injured, had been established and maintained.   *Hartnett* v. *Goddard*, 176 Mass. 326, 331.

Nor is the ruling that the plaintiff could not cross-examine his own witness to prove that the defendant was not a charitable organization reviewable on exceptions where no bias or prejudice of the witness is shown.   *Jennings* v. *Rooney*, 183 Mass. 577.   *Reed* v. *Mattapan Deposit & Trust Co.* 198 Mass. 306, 312.

It clearly appears from his uncontradicted testimony, that pursuant to the charter the Home maintained the wood yard to provide employment for the men, and to enable them "to save a little money so when they do get employment elsewhere they will have something to stay them over," and that, the income from invested funds and receipts from the wood yard being insufficient to meet expenses, the deficit is supplied by contributions from the public.

The wood yard having been operated as a part of the defendant's charitable work for the benefit of the inmates and not for commercial gain or profit, the verdict for the defendant was rightly ordered.   *Farrigan* v. *Pevear*, 193 Mass. 147, and cases cited. *Thornton* v. *Franklin Square House,* 200 Mass. 465.   And whether there was evidence for the jury of the plaintiff's due care and the alleged negligence of the defendant need not be considered.

*Exceptions overruled.*