JOHN DENNIS *vs.* CLYDE, NEW ENGLAND AND SOUTHERN LINES.

Suffolk.    January 8, 1918. — February 28, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Employer's liability: dangerous and unsafe fellow servants. *Evidence,*
Of incompetence of fellow employee.

The duty resting on an employer to guard against the employment of incompetent
servants is the same, whether the incompetence arises from ignorance of the work
to be done and physical or mental incapacity to perform it on the one hand, or
on the other hand from an unbalanced mind or self indulgent appetites and
vices.    Per RUGG, C. J.

While such incompetence of an employee may be shown by evidence of a general
reputation to that effect, evidence tending merely to show that an employee
was addressed by a few of his fellow employees as "crazy" is not sufficient to
warrant a finding of such a reputation.

While knowledge by an employer or by those acting for him of particular acts of
an employee of such character or number as to show him to be a dangerous man
with whom to work may tend to show negligence in failing to discharge him,
evidence which tends merely to show that on one occasion a longshoreman, with
the knowledge of a stevedore, who for his employer was in charge of him and his
fellow employees, was asleep during working hours at the place of work by reason
of drunkenness, that the longshoreman frequently drank whiskey during working
hours, that on one occasion he had drawn a knife during an altercation with a
fellow workman, which he did not use, the fellow workman running away, and
that he had said to a second fellow workman that he would "fix" him, will not
warrant a finding of such knowledge of the dangerous character of the workman
as will render the employer liable in an action by the second fellow workman
for personal injuries received by him when he afterwards was assaulted by the
alleged dangerous workman.

TORT for personal injuries occasioned by an assault upon the
plaintiff, while he was in the employ of the defendant, by a fellow
employee whom, it was alleged, the defendant was negligent in
employing and in keeping in his employ because his temperament,
reputation and character rendered him unsafe and unfit to mingle
and work with his fellow workmen.    Writ dated April 30, 1915.

In the Superior Court the case was tried before *J. F. Brown,* J.·
The material evidence is described in the opinion.    At the close
of the evidence the judge ordered a verdict for the defendant;
and the plaintiff alleged exceptions.

*W. G. Andrews*, (*E. I. Smith* with him,) for the plaintiff.

*S. R. Jones*, for the defendant.

RUGG, C. J. This is an action of tort to recover damages for injuries sustained by the plaintiff while a longshoreman in the employ of the defendant, who was not a subscriber under the workmen's compensation act, by reason of an assault committed upon him by a fellow workman named Banana. The ground of liability alleged is negligence on the part of the defendant in employing or continuing in employment the plaintiff's assailant, whose temperament, habits and characteristics known to the defendant rendered him incompetent, unsafe and dangerous as a fellow workman.

The evidence upon which it is sought to support this contention came entirely from the plaintiff, who testified that he "heard all the men call Banana crazy and that he is crazy, and that he heard two of his fellow employees, White and Taylor, call Banana crazy and some other fellows he could not remember. He heard Taylor call Banana crazy a good many times; every time he came around he would call him, 'Hello, crazy Banana.' He saw him drink a good many times around there when he was working; almost every time when he had a chance; 'quite a few times a day; the times I see, sometimes two, three days, and the others I can't say.' He saw him drink some stuff like whiskey from a half pint bottle; that he always used to have a half pint in his pocket. . . . 'One day we was working together in the hot house, and the stevedore come around and says, Where is Banana? I says, he was in there between that freight lying, and he is going out there and he saw him lying asleep, he is drunk, he is so drunk he can't work, and he started to laugh at him.' This was about a week before the accident;" that the stevedore, Melzer by name, in charge of the defendant's longshoremen, knew about Banana's crazy and drunken actions; that a few days before the plaintiff's injury he saw Banana and a Polish man having "an argument and fighting words." They were fighting only two or three minutes and "I saw the Banana pull a knife and Pollock run away." The plaintiff reported this affair to Melzer, who told him to go to work and he would see Banana about it. Later in the same day Banana said to the plaintiff, "You tell Bob (Melzer) about I pull a knife to a Pollock, but I going to fix you." When these words

were repeated to Melzer, he told the plaintiff "to mind his own business." Taylor told the plaintiff that "Banana was crazy on the day before he saw him sleeping on the potatoes," saying, "Look out for this fellow, he is crazy, he is drunk." The plaintiff thought Banana was crazy all the time they were working together, but "he never told Melzer that Banana was crazy; that the only reason why he thought Banana was crazy was this that Mr. Taylor told him, and because he saw him drunk the day he pointed him out to Mr. Melzer," and that on one occasion he thought Banana and Melzer drank together although he did not see them. These acts were all that the plaintiff according to his testimony had seen "Banana do out of the ordinary before" the assault was committed. There was ample testimony from various witnesses to the effect that Banana was a peaceful and inoffensive man, and contradicting all the significant testimony of the plaintiff, but this need not be considered in this connection, as it must be assumed that the plaintiff's testimony might be believed.

The principles of law which govern a case of this sort are settled. An employer is bound to the exercise of due care in hiring men who are reasonably safe companions in labor, whose disposition, temper and self restraint are such that they will not be dangerous to their fellows, and who are sufficiently stable in mind and temperate in habits to be harmless under the common irritations of daily work. Ordinary precaution in this regard must be used, not only in the initial employment but also in observance of conduct after the relation of master and servant has been established, in order to ascertain that the employee may not become a menace to the safety of those about him. The duty resting on the employer to guard against the employment of incompetent servants is the same whether incompetence arises from ignorance of the work to be done and physical or mental incapacity to perform it on the one hand, or on the other hand from an unbalanced mind or self indulgent appetites and vices. *Gilman* v. *Eastern Railroad,* 13 Allen, 433, 441. *Connors* v. *Morton,* 160 Mass. 333, 335. *Beers* v. *Isaac Prouty Co.* 200 Mass. 19. *Guilfoil* v. *Everett,* 214 Mass. 571. Incompetence of an employee may be shown by evidence of a general reputation to that effect. *Hatt* v. *Nay,* 144 Mass. 186. *Leary* v. *William G. Webber Co.* 210 Mass. 68, 73. Single instances of inefficiency by an individual are not admissible

to prove incompetency. *Cooney* v. *Commonwealth Avenue Street Railway*, 196 Mass. 11, 14. But knowledge by the employer, or of those acting for him, of particular acts by an employee of such character or number as to show him to be a dangerous man with whom to work, may tend to show negligence in failing to discharge him.

The evidence fails to show a general reputation that the plaintiff's fellow workman and assailant was insane or of a quarrelsome disposition. It appears that he was addressed by a few of his co-laborers as "crazy Banana." That seems to have been the nickname applied to him by three or four men working with him. Its use in speaking to him hardly warrants the conclusion that it constituted a conviction on their part that he was of unsound mind. Moreover, even if that were to be stretched so far as to be regarded as an expression of opinion by the few who used the sobriquet, it would not amount to a general reputation. *Driscoll* v. *Fall River*, 163 Mass. 105, 107.

The specific facts as to the plaintiff's assailant brought home to the knowledge of the defendant's foreman were in substance four: (1) he was once asleep by reason of drunkenness "at the place of work," (2) he occasionally, perhaps frequently, drank whiskey during working hours, (3) on one occasion he had drawn a knife during an altercation with a fellow workman, but did not use it and the latter ran away, and (4) he had said to the plaintiff that he would "fix" him. Whatever else may be said respecting these facts as to the use of liquor, they do not tend to show that the man was dangerous in this kind of work, or was of unbalanced mind so as to make him dangerous. The drawing of the knife was during a heated controversy with another man. It does not appear who was the aggressor, nor how it happened to be drawn, nor that any attempt was made to use it. No harm resulted. It was made the subject of conference in which apparently Banana satisfied Melzer of his good intentions. The threat to the plaintiff was not in connection with the common employment. It pointed in the direction of a personal ill will and vindictiveness disconnected with work, which well might have been aggravated rather than tranquilized by a discharge or reproof, the only courses of action open to the defendant.

*Exceptions overruled.*