JOHN F. MIKOTA, Administrator, Appellant, v. SISTERS OF MERCY AND MERCY HOSPITAL, Appellees.

**MASTER AND SERVANT:** Liability to Third Persons—Charitable Institutions. A charitable institution which is conducted solely for philanthropic and benevolent purposes is not liable for the negligence of its servants *in administering the charity*—not even to one who pays for the charitable services rendered by the institution to him. Whether such an institution may be held liable for negligently employing an incompetent servant, with consequent damages by reason of the incompetency of the servant, *quaere*.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

JUNE 27, 1918.

ACTION to recover damages from a charitable institution for injuries received through the negligence of defendant's employees. Petition dismissed. Plaintiff appeals.—*Affirmed*.

*R. S. Milner* and *Chas. L. Benesh*, for appellant.

*Hughes, Sutherland & Taylor*, for appellees.

Gaynor, J.—This action is brought to recover damages for personal injuries resulting in death. The petition alleges: That the defendants are incorporated under the laws of Iowa relating to corporations other than for pecuniary profits; that their principal place of business is at Cedar Rapids, Iowa; that they are engaged in operating a hospital; that the building is a large four-story building, with a number of rooms furnished for the accommodation of the sick and disabled; that in the building the sick and disabled are received and cared for, and medical aid and treatment furnished; that the building was erected and the hospital equipped by donations and voluntary contributions, made by persons interested in hospital work; that, though a corporation, they issued no stock and received no funds from the sale of capital stock, and are without provision for paying dividends; that, in their business of conducting a hospital, they receive and care for persons who are able and persons who are unable to make payment for the care and services rendered; that they receive and care for charitable cases, and do not turn away any persons who require care, treatment, and nursing; that they receive some patients at a stated, fixed, or agreed compensation, and have a regular schedule of prices for such persons; that a number of their patrons are of that class; that these patrons agree in advance to pay for hospital service; that the sums so received are used in paying the expenses and costs of running the hospital; that the defendants are supported by and pay all their expenses and the costs of running the hospital from money so received, together with such benevolent gifts and donations as they are able to obtain by solicitation or from voluntary donations; that this is the only means they have of support.

On the 9th day of August, 1913, plaintiff's intestate, Clarence E. Mikota, was ill with typhoid fever, and was conveyed to this hospital for care and treatment. He was taken to the fourth floor, and placed in a room in the care

of nurses. While suffering from delirium, resulting from the disease, he jumped from the window and was killed. The plaintiff, as administrator, brings this action to recover for his death.

The action is brought in three counts. The first count alleges the facts above, and says that there was an express oral agreement that the intestate should pay $15 a week, and should receive therefor proper and efficient care, attention, and treatment; that it was under this contract that the deceased entered this hospital as a patient; that the defendant violated its contract in this: that it failed to give the intestate faithful, proper, efficient care and attention, but, on the contrary, left him alone in a room on the fourth floor, without attendants and failed properly to care and guard him; that, while in a delirious condition, and while left alone and unguarded, he jumped from the window of the room, fell to the ground, and was killed; that the windows of the room were improperly, inefficiently, and carelessly left unguarded, without bars or obstructions.

The second count, after alleging all the facts above, except the express agreement, says that there was an implied agreement, and that this was violated.

The third count is based on tort. After alleging the facts above set out, it says that the officers, agents, and attendants of the hospital, knowing that deceased was likely to be seized with delusions and delirium, received and placed him in a room on the fourth floor, without bars on the windows, and left him there alone, or in charge of incompetent attendants and nurses; and that his death was due to their negligence.

The fourth count we need not consider at this time.

The defendant demurred to all the counts of the petition on the ground that the defendant is not liable for the acts of its agents and servants and employees, though negli-

gently done.   This demurrer was sustained, and plaintiff's
petition dismissed.   From this, plaintiff appeals.

In argument, appellant claims that Count 1 charges a
breach of a duty arising out of an express oral contract;
that Count 2 charges a breach of an implied duty to give the
deceased proper care and treatment; that Count 3 rests in
tort, and charges negligence based on a violation of an ex-
press or implied contractual duty.

The only error assigned is that the court erred in sus
taining the demurrer.

There is a great diversity of opinion among the courts
on the question of the liability of a charitable institution
to respond in damages for negligence.   Some courts hold it
is not liable at all for negligence.   Other courts hold that,
though liable to others, it is not liable to a patient received
for treatment, when the injury resulted from the negligence
of employees and servants.   Some courts hold that, though
not liable at all for the negligence of its servants or em-
ployees; it is liable for injuries traceable to some negligence
on the part of the corporation itself,—a failure to discharge
some duty that cannot be delegated to servants to perform.
Thus, an exception is made where the liability is traceable,
not to the negligence of servants, but to the negligence of
the defendant in employing incompetent servants.   Even
where liability has been found, the courts have based their
holdings upon entirely different reasoning.   Some say there
is no liability because trust funds cannot be diverted from
trust purposes to the satisfaction of claims for negligence.
Other courts repudiate this doctrine that the funds are in
the nature of trust funds and cannot be diverted from their
purpose, and hold such an institution liable to a stranger
or a servant for negligence, though not liable to a patient
received in the institution for treatment, basing nonliability
to a patient on the theory of an implied contract not to hold
the institution liable for the manner of the treatment by its

servants. In some cases, they have been exempted from liability because they are considered agencies of the government. We think the great weight of authority is to the effect that an institution of this kind is exempted from liability to one who comes to it and accepts the benefits of its charity,—to a patient received for treatment,—so far as liability is predicated on the negilgence of its servants in administering the charity.

In *Jensen v. Maine E. & E. Inf.*, 107 Me. 408 (78 Atl. 898), it was said:

"A charitable institution, supported by private and public funds, is not liable for its servants' torts."

In this case, the defendant was charged with negligence in that its servant carelessly allowed the plaintiff's decedent, while an inmate of the infirmary, to evade the supervision of her attendants and fall through a window to the sidewalk. The accident resulted in fatal injury. She was ill with a fever. In that case, it was said:

"No principle of law seems to be better established, both upon reason and authority, than that which declares that a purely charitable institution, supported by funds furnished by private and public charity, cannot be made liable in damages for the negligent acts of its servants."

It was further held that the fact that the institution charged a compensation for the use of its rooms to those who were able to pay, did not cause it to lose any of the essential attributes of a charitable institution; and the court quoted with approval from *McDonald v. Massachusetts Gen. Hosp.*, 120 Mass. 432 (21 Am. Rep. 529), as follows:

"The corporation has no capital stock, no provision for making dividends or profits; and whatever it may receive from any source, it holds in trust, to be devoted to the object of sustaining the hospital and increasing its benefit to the public, by extending or improving its accommodations and diminishing its expenses. Its funds are derived mainly

from public and private charity; its affairs are conducted for a great public purpose, that of administering to the comfort of the sick, without any expectation, on the part of those immediately interested in the corporation, of receiving any compensation which will inure to their own benefit."

The same doctrine is announced in *Gable v. Sisters of St. Francis*, 227 Pa. 254 (75 Atl. 1087). In this case, the plaintiff, a young woman, was admitted into the hospital as a pay patient, and came there for the purpose of having a surgical operation performed by a surgeon of her own choice. While she was undergoing the operation, one of the hospital nurses prepared her bed, the bed to be occupied by her on her return from the operating room. For the purpose of warming the bed for the patient, bottles containing hot water were placed in the bed. Upon the patient's return from the operating room, another nurse, who had assisted in the patient's return, removed the water bottles, so as to properly place the patient in the bed, and then restored them to their proper place beside the body. The patient was unconscious at the time. Hot water escaped from one of the bottles, and caused her serious injury. To recover for these injuries, she brought an action. The court said, referring to the hospital:

"It was founded and erected out of funds bequeathed the corporation to that end, and it is maintained by charitable donations, appropriations made by the state, and pay received from such patients as demand and are accommodated with rooms separate from the general ward. * * * Admission to the hospital is denied no one on grounds of religious faith or because of inability to pay. The corporation is under the management or control of a board of managers. It has no corporate stock; it can declare no dividends; and its entire income is employed to maintain and enlarge, as it is able, its capacity for gratuitous, beneficent service to the public. The fact that it receives pay for a certain class of

patients detracts nothing from its character as a purely charitable institution."

In the discussion of this case, it develops that the plaintiff was a pay patient. The court said:

"It is wholly immaterial that the patient who here complains of injury was admitted as a pay patient."

The court further said, in disposing of the argument based upon that fact:

"The argument overlooks the fact that every dollar received by the defendant corporation, from whatever source, is stamped with the impress of charity. For what did these plaintiffs pay? For accommodations which the hospital was enabled to provide through the use of money charitably donated to it. The room, the bed, the furnishings, and conveniences for which the plaintiff paid are all of them the direct and immediate product of the voluntary donations it received. It follows that the money that the hospital received from its pay patients is as strictly the increment of the charitable donations it has received as would be the interest on the money given it, if invested on loan."

It was held that the defendant was not liable.

In *Thornton v. Franklin Square House,* 200 Mass. 465 (86 N. E. 909), the defendant was a charitable corporation. The plaintiff, an inmate, was injured by the falling of a fire escape on the premises. The court held that, if the injury is caused by the negligence of servants, or agents properly selected, the defendant is not liable for their torts.

When we have a proper conception of the object of these institutions,—that they are created for the purpose of administering charity, and not for profit,—we can well understand the basis on which courts have reached the conclusion that they are not liable to those who come to receive their benefactions, for the negligence or torts of their servants to whom the distribution of the benefaction is committed.

As bearing upon the question here under consideration,

see *Fordyce v. Woman's C. N. L. Assn.*, 79 Ark. 550 (96 S.
W. 155) ; also *Bruce v. Central M. E. Church*, 147 Mich. 230
(110 N. W. 951), in which it was charged that injury re-
sulted from the negligence of the defendant in furnishing a
defective scaffolding, on which plaintiff was required to
work.    There was a demurrer to the complaint, on the
ground that the defendant was not liable for negligence or
default of any agent or servant having the care and custody
of the property; and this demurrer was sustained.    It will
be noted that the injured party was not a patient in the
hospital.    Justice Carpenter, speaking for the court, sought
to differentiate those cases in which the party was receiving
the benefit of the charity from those cases in which the in-
jured party was not, and said:

"The ground upon which liability is denied in nearly
all  * * *  cases is that stated in the *Downes* case (101 Mich.
555, 25 L.R.A.[O.S.] 602), viz., that it would thwart the pur-
poses of the trust; that is, it would oppose the will of the
founder of the trust to pay from the trust funds damages
caused by an agent's tort.    It is entirely logical to say that
this will must be recognized by beneficiaries of the trust.
It may justly be said that the benefit of the trust is ex-
tended to them and accepted by them upon the implied con-
dition that they shall recognize that will.    By becoming
beneficiaries, they agree to recognize it."

In the *Bruce* case, the defendant was held liable, though
the court recognized exemptions in favor of the institution
for injuries resulting to patients through the negligence of
servants.    The thought is that, by becoming beneficiaries,
they agree to recognize the fact that the funds have been
donated, to be used only for charitable purposes.    The the-
ory is that the law implies an intention, on the part of the
donors of charitable funds, that such funds shall only be
used for charitable purposes, and not diverted from that pur-
pose; that the party who receives benefits from the charity

acquiesces in the intention, and consents that the fund used in administering the charity shall not be diverted from that purpose, even to the satisfaction of claims based upon the tortious acts of the servants charged with the administration of the fund. So the courts differentiate between an outsider and one who is receiving the benefits of the charity. All the charities must be administered through human instrumentality, and these are simply the agencies employed in the distribution of the charity; and he who accepts the charity through the instrumentalities employed, cannot complain of the manner of distribution, though in it he receives a hurt.

In Powers v. Massachusetts Hom. Hosp., 47 C. C. A. 122 (109 Fed. 294, 65 L. R. A. 372), it was said:

"That a man is sometimes deemed to assume a risk of negligence, so that he cannot sue for damages caused by the negligence, is familiar law. Such is the case of common employment, and such are the cases of athletic sports and the like. * * * Such is the case at bar. One who accepts the benefit either of a public or private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at. any rate, if the benefactor has used due care in selecting those servants. To paraphrase the illustration put by the learned judge before whom this case was tried, it would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. * * * If, in their dealings with their property appropriated to charity, they create a nuisance. by themselves or by their servants, * * * there are strong reasons for holding them liable to outsiders, like any other individual or corporation. * * * But if a suffering man avails himself of their charity, he takes the risks of malpractice, if their charitable agents have been carefully selected."

See, also, *Taylor v. Protestant Hosp. Assn.*, 85 Ohio St. 90 (96 N. E. 1089).

From an examination of the authorities, we think the courts are practically agreed—at least the weight of authority tends to support the holding—that a charitable institution is not responsible, to those who avail themselves of its benefits, for injury sustained through the negligence or torts of its managers, agents, and servants; and this on the theory so well stated by Justice Lowell in the *Powers* case, supra. For late cases, see *Duncan v. Nebraska S. B. Assn.*, 92 Neb. 162 (137 N. W. 1120), in which it is said:

"It is a well-established doctrine that a charitable institution conducting a hospital solely for philanthropic and benevolent purposes is not liable to inmates for the negligence of nurses."

See, also, *Hearns v. Waterbury Hosp.*, 66 Conn. 98 (33 Atl. 595), in which the authorities generally are reviewed. In this case, it is said:

"It is enough that a charitable corporation like the defendant—whatever may be the principle that controls its liability for corporate neglect in the performance of a corporate duty—is not liable, on the grounds of public policy, for injuries caused by personal wrongful neglect in the performance of his duty by a servant whom it has selected with due care; but in such case, the servant alone is responsible for his own wrong."

In *Nicholson v. Atchison, T. & S. F. Hosp.*, 97 Kan. 480 (155 Pac. 920), a suit by a patient to recover for negligence, recovery was denied, on the ground of public policy. See *Conklin v. John Howard Ind. Home*, 224 Mass. 222 (112 N. E. 606); also, *Schloendorff v. Society of N. Y. Hosp.*, 211 N. Y. 125 (105 N. E. 92), in which it is said:

"Certain principles of law governing the rights and duties of hospitals, when maintained as charitable institutions, have, after much discussion, become no longer doubtful. It

is the settled rule that such a hospital is not liable for the
negligence of its physicians and nurses in the treatment of
patients [citing authorities]. This exemption has been
placed upon two grounds. The first is that of implied waiver.
It is said that one who accepts the benefits of a charity en-
ters into a relation which exempts one's benefactor from
liability for the negligence of his servants in administering
the charity. * * * The hospital remains exempt, though the
patient makes some payment to help defray the cost of
board [citing authority]. Such a payment is regarded as
a contribution to the income of the hospital, to be devoted,
like its other funds, to the maintenance of the charity."

See *Morrison v. Henke,* 165 Wis. 166 (160 N. W. 173),
in which it is said:

"The authorities in this country almost uniformly hold
that, in the absence of any negligence in their selection,
charitable hospitals are not liable to their patients for the
torts of their employees."

On the theory that the defendant was not liable for the
negligence of the servants of the defendant in this case, we
think the demurrer to plaintiff's petition was rightly sus-
tained.

It may be contended, however, that the plaintiff has
brought the case within the claimed exceptions to the gen-
eral rule, and has alleged negligence on the part of the cor-
poration itself. A careful examination of the petition dis-
closes that in no place does it affirmatively appear that the
injury complained of was caused or contributed to by any
negligent act of the defendant in the selection of servants.
There is no allegation that the defendant did not use reason-
able care in the selection of its servants, or that the injury
was due to negligence in the selection of servants, as differen-
tiated from the negligence of the servants selected. When
the injury is traceable to the negligence of the servant,
there is no liability. If the case rested on the negligence of

the defendant in the selection of incompetent servants, then it should appear affirmatively that the injury is traceable to such negligence. Even an incompetent servant may be negligent, and if the injury is traceable to such negligence, and not to the incompetency, then there is no liability, under the rule hereinbefore stated. A fair interpretation of the language used leads the mind to the thought that liability is predicated, not upon incompetency on the part of the servant employed, but upon the negligent manner in which they, whether competent or incompetent, discharged the duty assigned. Even though we grant the execution, we do not find the case brought within the exception, and the general rule hereinbefore stated must prevail. The demurrer was, therefore, rightly sustained, and we affirm the action of the court.—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.