HENRY ROOSEN, administrator, *vs.* PETER BENT BRIGHAM HOSPITAL.

SAME *vs.* SAME.

Suffolk. November 20, 1919. — February 26, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Charity. Corporation,* Charitable. *Negligence,* Of officers and employees of public charitable corporation. *Contract,* Performance and breach.

A public charitable corporation operating a hospital is not liable in an action of tort for the conscious suffering of one of its patients caused by negligence, either of its managing officers in selecting incompetent servants and employees or of servants or employees selected with care.

An action of contract against a public charitable corporation conducting a hospital cannot be maintained by the administrator of the estate of a patient, who suffered consciously and afterwards died in the hospital, upon allegations that the defendant made an oral contract to give to the plaintiff's intestate careful and proper care and treatment and that the intestate's suffering was caused by a breach of the contract and the rendering of "careless and improper care and treatment."

The provisions of R. L. c. 171, § 2, as amended by St. 1907, c. 375, impose no liability upon a public charitable corporation conducting a hospital for the causing of the death of a patient which resulted either through the negligence of the officers of the defendant in selecting incompetent servants or employees or through negligence of servants or employees carefully selected.

TORT, with a declaration in two counts, by the administrator of the estate of Jennie Roosen for causing her death, it being alleged in the first count that the death was caused by the acts, described in the opinion, of incompetent persons negligently employed by the defendant, and the second count containing allegations that the death was caused by "the combined negligence of certain persons in " the defendant's "pharmacy department" and of the nurse attending the plaintiff's intestate. Writ dated March 21, 1919; also an action of

TORT OR CONTRACT, with a declaration as amended in five counts, by the same plaintiff for the conscious suffering of the plaintiff's intestate, preceding her death, the allegations in the counts as to the cause of the conscious suffering being as follows: in the first count, a failure of the defendant to fulfil contract obligations

undertaken by it to give to the plaintiff's intestate careful and proper care and treatment; in the second, fourth and fifth counts, negligence of the defendant and of its governing board and officers in employing incompetent persons, whose incompetence and negligence caused the suffering of the plaintiff's intestate; in the third count, negligence of the nurse who was in attendance upon the plaintiff's intestate.

The defendant demurred to the declaration in each case. The demurrers were heard by *Wait*, J., and were sustained. Judgments for the defendant were entered; and the plaintiff appealed.

*W. G. Thompson,* (*R. Spring* with him,) for the plaintiff.

*R. G. Dodge,* (*C. F. Choate, 3d,* with him,) for the defendant.

RUGG, C. J.   These are two actions, one to recover for the death and the other for the conscious suffering of Jennie Roosen, the plaintiff's intestate, caused by injuries sustained by her while she was a patient in the hospital conducted by the defendant. The specific act alleged as that out of which the actions arise was careless and negligent treatment of the patient, while at the hospital for a surgical operation and the subsequent convalescence, in that corrosive sublimate, a deadly poison, was administered to her in place of Epsom salts, a harmless drug.  Distinctive allegations of several counts charge corporate negligence of the defendant in employing incompetent servants, whose conduct caused the harm, and in causing the receptacles containing corrosive sublimate and Epsom salts, drugs which closely resemble each other in appearance, to be and remain in near proximity to each other. Another count alleges the combined negligence of those in charge of the drugs and of the nurse in administering the poison.  Another count avers an oral contract with the defendant whereby it promised, in consideration of weekly payments to it in advance, to perform an operation and to provide, for the use of the plaintiff's intestate, a bed and board and to give her "careful and proper care and treatment," and breach of that contract by giving her "careless and improper care and treatment."

That the defendant is a public charitable corporation established for the care of sick and indigent persons is not controverted. The fact that it receives compensation from some of its patients does not affect in any respect its character or liability as a public charity.  *New England Sanitarium* v. *Stoneham,* 205 Mass. 335, and

cases cited at page 342. All such payments are devoted exclusively to charitable uses and not at all for private gain.

It was decided in *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432, that there could be no recovery in an action of tort for injuries received through negligence of the servants or agents of a public charity such as is a hospital. The principle of immunity there stated was that a charitable corporation of that nature "has no funds which can be charged with any judgment which he [the plaintiff] might recover, except those which are held subject to the trust of maintaining the hospital." That decision was affirmed in *Benton* v. *Boston City Hospital*, 140 Mass. 13, 17, which, however, went on the ground that the defendant, although a corporation, was in truth but an agency of the city of Boston and that, as a municipality, it could not be held liable for negligence of its servants in the performance of a function undertaken by it as a department of government, on the authority of *Hill* v. *Boston*, 122 Mass. 344. In *Farrigan* v. *Pevear*, 193 Mass. 147, an action of tort for negligence of servants of a private charity, it was said, after relying upon *McDonald* v. *Massachusetts General Hospital*, *ubi supra*, as an authority exonerating the defendant, "Among the reasons given for this exemption it has been said, that being a charitable institution rendering services to the public without pecuniary profit, if the property of the charity was depleted by the payment of damages its usefulness might be either impaired or wholly destroyed, the object of the founder or donors defeated, and charitable gifts discouraged: or that if an individual accepts the benefit of a public charity he thereby enters into a relation which exempts his benefactor from liability for the negligence of servants who are employed in its administration, provided due care has been used in their selection." In holding in *Zoulalian* v. *New England Sanatorium & Benevolent Association*, 230 Mass. 102, that the workmen's compensation act, St. 1911, c. 751, Part I, does not apply to a public charitable corporation, it was said, pages 105, 106: "It never has been held in this Commonwealth that a charitable institution was liable for negligence; on the other hand, it has been expressly held that such institutions are not liable for the negligence of their servants or agents." To the same general point is *Thornton* v. *Franklin Square House*, 200 Mass. 465. In *Conklin* v. *John Howard Industrial Home*, 224 Mass. 222, the plaintiff

sought to recover for personal injuries received by him, while in the employ of the defendant, by reason of the defective condition of a wood chopping machine with which he was set at work without adequate instruction or warning. That was an allegation of corporate negligence as distinguished from negligence of servants or agents. It is a duty of an employer, which is personal and cannot be delegated, both to furnish safe appliances to his servant and to warn inexperienced employees of dangers known to the employer and not obvious and not known to the servant. *Moynihan* v. *Hills Co.* 146 Mass. 586.  *Erickson* v. *American Steel & Wire Co.* 193 Mass. 119, 125.  *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192.  *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294, 298.

The specific ground on which the immunity of hospitals for negligence of servants rests has been discussed only in *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, among our adjudications. That decision was put squarely on the foundation that the funds of a public hospital are devoted to a charitable trust and that to subject them to the payment of a judgment for negligence of its servants would be an unlawful diversion of the trust. That is the ground upon which that decision rests. No other is suggested in the opinion. In *Farrigan* v. *Pevear,* 193 Mass. 147, several grounds were referred to, but the chief point settled in that case was that a private charity stood in respect of liability for negligence of its servants on the same footing as a public charity and so far as concerns binding authority it rested upon *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432.

The case at bar presents, as one of its main questions, whether a hospital can be held liable for the negligence of its managing officers in selecting incompetent servants and agents. In *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, occurs this cautious statement: "The liability of the defendant corporation can extend no further than this: if there has been no neglect on the part of those who administer the trust and control its management, and if due care has been used by them in the selection of their inferior agents, even if injury has occurred by the negligence of such agents, it cannot be made responsible." In substance this has been repeated in several subsequent decisions and in numerous adjudications by other courts where that decision has been cited. That sentence now is seized upon as basis for the

argument that such a charitable corporation as a hospital should be held liable in damages for negligence of its managing officers in selecting incompetent subordinate agents. That sentence, however, was merely precautionary. It bounded the question presented by the facts then before the court. It simply showed the extent of the decision. It does not purport to be a comprehensive or exclusive statement. The correlative assertion, to the effect that there is liability of the hospital in cases where there has been carelessness on the part of the managers in the selection of servants and agents, is neither expressed nor implied. The discussion of the question now presented must be approached in the light of *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432, as a binding authority.

There is no sound distinction in reason between the liability of a hospital for the negligence of its inferior agents and its liability for the carelessness of its managers. The conduct of both relates to the execution of the charity. The inferior agents usually work for pay, while the managing officers as matter of common knowledge generally undertake the administration of the public charity without compensation, solely out of public spirit in a desire to serve the general welfare. If the hospital is held responsible for their acts of negligence, the funds devoted to the relief of suffering humanity must be diverted in the one instance to the same extent and manner as in the other to the payment of claims wholly foreign to the purposes of the public trust. That being the ground of decision in *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432, it is as applicable to the facts here alleged as to those there presented.

The doctrine of liability of an employer for negligence in the selection of servants is a doctrine of the law of master and servant. The master owes the general duty to his servants not to expose them to any perils not necessarily incident to his business, against which reasonable care on his part may guard them. The selection of servants is a function of the master. It is a part of his general obligation to employ servants with whom others may safely work so far as that end may be attained through the exercise of ordinary diligence. It ameliorates the common law doctrine of non-liability of the master to one servant for the negligent act of his fellow servant. It was established because the employment of servants

was the personal act of the master, which could not be delegated and for which therefore he was personally liable. It is as much one of the implied terms of the contract of employment that the master will use due care in the selection of fellow servants as that he will provide a safe place to work, or furnish and maintain machinery in good repair. The employee has a right to rely upon the performance of that duty by his employer and can recover damages flowing from failure in that particular. It is of no consequence to anybody except a fellow servant, whether an injury is inflicted through the negligence of a servant selected with the greatest care or one selected without any care at all. In either case the person injured by such negligence makes out the liability of the master (if such liability exists) through proof of injury to him caused by the negligence of the servant in the course of his employment. See *Gilman* v. *Eastern Railroad,* 10 Allen, 233, 238; S. C. 13 Allen, 433, 441; *Cayzer* v. *Taylor,* 10 Gray, 274; *Dennis* v. *Clyde, New England & Southern Lines,* 229 Mass. 502, 504; *Wabash Railway* v. *McDaniels,* 107 U. S. 454.

So far as concerns third persons (except where there is some special statutory provision, see *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8, for review of statutes), there is no distinction between the liability of an employer for the negligence of his servants in the course of their employment and for his own negligence in selecting incompetent servants. The measure of responsibility in one case is the same as in the other.

The duty of selecting competent servants is no more clearly a duty personal to the master not susceptible of delegation than is the duty to provide safe machinery or to warn of hidden dangers. Yet for such negligence the charitable corporation was exonerated in *Conklin* v. *John Howard Industrial Home,* 224 Mass. 222.

The doctrine of *respondeat superior,* which was invoked by the plaintiff in *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, as the ground for liability of the defendant and rejected by the court, is a doctrine of general application to masters respecting their responsibility to third persons for the negligent acts of their servants performed within the scope of their duty. The doctrine of *respondeat superior* was again urged as the ground of liability of the defendant in *Farrigan* v. *Pevear,* 193 Mass. 147, and rejected after full consideration as inapplicable. If a hospital is to be held

responsible for negligent treatment of patients, there seems to us to be no sound ground for a distinction between the negligence of the managers of the hospital and the negligence of subordinate servants as a basis of liability. A sound ground for distinction between exoneration from liability for the negligence of managers and that of subordinate agents seems equally wanting. Since it is settled that there is no liability for negligence of the latter, it must follow that there is none for that of the former. Otherwise there would be no reason for not overruling *McDonald* v. *Massachusetts General Hospital, ubi supra.*

The inevitable result of our own decisions is to relieve a hospital from liability for negligence of the managers in selecting incompetent subordinate agents, as well as for the negligence of such subordinate agents selected with care. This conclusion is supported by the great weight of authority in other jurisdictions.

The principle has been declared widely that a corporation organized and maintained solely for the treatment of the sick as a public charity cannot be held liable for injuries to a patient caused by the negligence either of its managers or its employees; the basis of decision being that trusts for charities cannot thus be diverted and the benevolent designs of the donors thus be thwarted, and in some instances on general grounds of public policy. *Gable* v. *Sisters of St. Francis,* 227 Penn. St. 254. *Duncan* v. *Nebraska Sanitarium & Benevolent Association,* 92 Neb. 162. *Vermillion* v. *Women's College of Due West,* 104 S. C. 197. *Jensen* v. *Maine Eye & Ear Infirmary,* 107 Maine, 408. *O'Neill* v. *Odd Fellows Home,* 89 Ore. 382. *Fordyce* v. *Woman's Christian National Library Association,* 79 Ark. 550, 562. *Parks* v. *Northwestern University,* 218 Ill. 381, 385. *Cook* v. *John N. Norton Memorial Infirmary,* 180 Ky. 331. *Adams* v. *University Hospital,* 122 Mo. App. 675. *Downes* v. *Harper Hospital,* 101 Mich. 555. *Perry* v. *House of Refuge,* 63 Md. 20. *Abston* v. *Waldon Academy,* 118 Tenn. 24. The same result is reached in *Maia* v. *Eastern State Hospital,* 97 Va. 507, though upon reasoning partaking in part of that upon which rests *Benton* v. *Boston City Hospital,* 140 Mass. 13.

The present state of the law in England has been thought by some to be somewhat in doubt. The question arose in *Heriot's Hospital* v. *Ross,* 12 Cl. & F. 507, a Scotch appeal, which was an action in the nature of tort for damages against a hospital for

refusal to admit the plaintiff to its benefits.  It there was said, at page 513, by Lord Cottenham, "There is a trust, and there are persons intended to manage it for the benefit of those who are to be the objects of the charity.  To give damages out of a trust fund would not be to apply it to those objects whom the author of the fund had in view, but would be to divert it to a completely different purpose."  Even more emphatic language was used by Lord Campbell on page 518, viz.: "It seems to have been thought, that if charity trustees are guilty of a breach of trust, the persons damnified thereby have a right to be indemnified out of the trust funds.  That is contrary to all reason, and justice, and common sense.  Such a perversion of the intention of the donor would lead to most inconvenient consequences.  The trustees would in that case be indemnified against the consequences of their own misconduct, and the real object of the charity would be defeated. . . . A doctrine so strange . . . ought to have been supported by the highest authority.  There is not any authority, not a single shred, here to support it."  Since the House of Lords never overrules its own decisions, no matter how erroneous they may be subsequently regarded, *London Street Tramways Co. Ltd.* v. *London County Council,* [1898] A. C. 375, the law of England would seem to be settled on this point.  The case of *Mersey Docks* v. *Gibbs,* L. R. 1 H. L. 93, goes upon grounds utterly at variance with those established after great consideration in *Hill* v. *Boston,* 122 Mass. 344, and *Benton* v. *Boston City Hospital,* 140 Mass. 13.  Whatever may be the law of England, our own decisions and the great weight of authority in this country are clear in support of the conclusion here reached.

There are numerous cases where the hospital has been held not liable under the application of a rule stated to exonerate the charity from liability for negligence of servants selected with care, and it has not been necessary to consider the further question of liability for the negligence of managers.  See, for example, *Hearns* v. *Waterbury Hospital,* 66 Conn. 98; *Union Pacific Railway* v. *Artist,* 9 C. C. A. 14; 60 Fed. Rep. 365; *Taylor* v. *Protestant Hospital Association,* 85 Ohio St. 90; *Plant System Relief & Hospital Department* v. *Dickerson,* 118 Ga. 647 (see *Morton* v. *Savannah Hospital,* 148 Ga. 438); *Wharton* v. *Warner,* 75 Wash. 470, 476; *Nicholson* v. *Hospital Association,* 97 Kans. 480; *Morrison* v. *Henke,* 165 Wis.

166; *Mikota* v. *Sisters of Mercy,* 183 Iowa, 1378; *Bishop Randall Hospital* v. *Hartley,* 24 Wyo. 408.

When the negligence of physicians or nurses has been charged against the hospital, the defendant has been held not liable in other cases on the ground that the relation of master and servant does not exist. *Schloendorff* v. *New York Hospital,* 211 N. Y. 125. *Hillyer* v. *Governors of St. Bartholomew's Hospital,* [1909] 2 K. B. 820. *Texas Central Railroad* v. *Zumwalt,* 103 Texas, 603. *Basabo* v. *Salvation Army, Inc.* 35 R. I. 22, 28. See *Hospital of St. Vincent* v. *Thompson,* 116 Va. 101.

Decisions, which exonerate steamship companies in the performance of the statutory duty of furnishing ship surgeons provided due care is used in their selection seem to us to rest on a somewhat analogous footing. *O'Brien* v. *Cunard Steamship Co.* 154 Mass. 272. *The Great Northern,* 163 C. C. A. 660; 251 Fed. Rep. 826. *Allen* v. *State Steamship Co. Ltd.* 132 N. Y. 91.

Almost all courts reach the conclusion that a public hospital is exonerated from liability to patients injured through negligence of servants or employees. That result has been reached in some instances on the ground that one who accepts the benefactions of a public or private charity enters into such a relation as to exempt his benefactor from liability for negligence of his servants in administering the charity whether money is paid for the treatment or not. This ground of exemption is adopted by decisions of courts of several jurisdictions. *Powers* v. *Massachusetts Homœopathic Hospital,* 47 C. C. A. 122. *Hordern* v. *Salvation Army,* 199 N. Y. 233. *Thomas* v. *German General Benevolent Society,* 168 Cal. 183, 188. See *Stewart* v. *California Medical Missionary & Benevolent Association,* 178 Cal. 418. This principle manifestly would exonerate the defendant in the case at bar.

There are a few decisions which hold the hospital responsible for negligence of the managers in selecting physicians and servants, although not responsible for the negligence of physicians and servants when carefully selected. *Gitzhoffen* v. *Sisters of Holy Cross Hospital Association,* 32 Utah, 46. *St. Paul's Sanitarium* v. *Williamson,* 164 S. W. Rep. 36. This view at first sight is apparently supported by *Illinois Central Railway* v. *Buchanan,* 126 Ky. 288, but that decision rests upon the peculiar relation of the railway company to its employees, for whose benefit the hospital was

maintained.  It is not in conflict with the general current of authority, as is shown by *Cook* v. *John N. Norton Memorial Infirmary,* 180 Ky. 331, 337.  Other cases go so far as to hold the hospital liable even for the negligence of surgeons, agents and servants carefully selected on the doctrine of *respondeat superior.*  See *Tucker* v. *Mobile Infirmary Association,* 191 Ala. 572, wherein the great weight of authority is recognized as being the other way and where there is a dissenting opinion.  See *Glavin* v. *Rhode Island Hospital,* 12 R. I. 411, 428, a decision soon modified by legislation placing the exoneration of a hospital on the same footing as that which we have here decided.  Gen. Laws of R. I. 1909, c. 213, § 38.  In *Donaldson* v. *General Public Hospital in St. John,* 30 New Brun. 279, the decision was by a divided court.  See also *Lavere* v. *Smith's Falls Public Hospital,* 35 Ont. Law Rep. 98, where the judgment is rested in part upon *Mersey Docks* v. *Gibbs,* L. R. 1 H. L. 93, which, as has been pointed out, is at variance with the law of this Commonwealth.  Both these classes of decisions hold the hospital to a higher degree of responsibility than even the host of an invited guest, *Massaletti* v. *Fitzroy,* 228 Mass. 487, *Southcote* v. *Stanley,* 1 H. & N. 247, 249, and exclude all consideration of the fact that the hospital is not engaged in ordinary commercial transactions with all the liabilities thereby implied.  Manifestly these cases are at variance with our own decisions and with the great weight of authority elsewhere.

The allegation of an oral contract with the defendant for careful treatment adds no element of liability to those which would exist otherwise.  There can be no liability in contract such as here is alleged, if none exists in tort.  The whole matter relates to the execution of the public charity administered by the defendant, and is governed by the same principles in whatever aspect presented. *Paterlini* v. *Memorial Hospital Association,* 160 C. C. A. 49; 247 Fed. Rep. 639, 644; certiorari denied, 246 U. S. 665.  *Duncan* v. *St. Luke's Hospital,* 113 App. Div. (N. Y.) 68, 73.  *Magnuson* v. *Swedish Hospital,* 99 Wash. 399, 403.

The so called death statute, St. 1907, c. 375, imposes no liability upon a hospital toward a patient under the circumstances here alleged.  That statute imposes a liability when "a person or corporation by his or its negligence, or by the negligence of his or its agents or servants while engaged in his or its business, causes the

death of a person who is in the exercise of due care." The reasons already stated show that the terms of that statute are not applicable to a case where, from the nature of the corporation as a public charitable hospital, it cannot be guilty of negligence in respect of the treatment of its patients pursuant to the great charitable purpose for which it was established. This is but an inevitable application of the principle illustrated in *Donohue* v. *Newburyport,* 211 Mass. 561, *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8, and *Zoulalian* v. *New England Sanatorium & Benevolent Association,* 230 Mass. 102. Plainly there is nothing at variance with this conclusion in *Flynn* v. *Lewis,* 231 Mass. 550.

In each case let the entry be

*Judgment for defendant affirmed.*