# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1829, AT BOSTON.

PRESENT :

Hon. ISAAC PARKER, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,

---

### Elisse Martin *et al. versus* Joseph Ingersoll.

Where I, an indorser of a protested bill, after having had sufficient opportunity to ascertain the circumstances of the presentment, protest, and notice, promised M, a subsequent indorser, who had taken up the bill, to repay him, and afterwards received the bill from M, proved it in his own name against the estate of the drawees who had failed, and received a dividend upon it, and retained the bill ; it was *held*, that I was liable on this promise to repay M, unless he could prove that his promise was made under a mistake of the facts.

During the Christmas holydays vessels are not allowed to clear out at the Havana ; it *seems* therefore, that during the continuance of the holydays it is not necessary to write a notice of the dishonor of a bill, to be sent to a foreign port.

THIS was assumpsit against the defendant as indorser of a bill of exchange dated at Charleston, S. C., April 23, 1825, drawn by James Butler Clough upon Crowder, Clough & Co. of Liverpool, payable to John Robinson & Co. or order, in London, for 1163*l*. 19*s*. 6*d*. at 60 days' sight, and indorsed by Robinson & Co. to the defendant, and by him to the plaintiffs, and by them to one Pasqual, and by him to one Mila de

Martin
v.
Ingersoll.

la Roca, and by him to Gower, Nephews & Co. of London. The declaration, besides counts for the non-acceptance and non-payment of the bill, contained the usual money counts. The general issue was pleaded and joined.

At the trial, before *Parker* C. J., the evidence on behalf of the plaintiffs proved the following facts.

The plaintiffs had received the bill of the defendant, and when they sold it, placed the proceeds to the defendant's cred-it The bill was presented for acceptance in Liverpool and protested for non-acceptance August 10, 1825, and on the 26th of that month it was accepted *supra* protest by B. A. Goldschmidt & Co. in London, for the honor of Martin, Knight & Co., the plaintiffs. The bill was duly presented for payment and protested for non-payment October 12, 1325, and was afterwards paid by Goldschmidt & Co., for the honor of the plaintiffs, to the holders, Gower, Nephews & Co. Goldschmidt & Co., under date of August 30, 1825, advised the plaintiffs of the bill's being noted for non-acceptance, and of their having accepted it for the honor of the plaintiffs ; and October 3, 1825, remitted the bill and protest for non-payment to the plaintiffs, who received them December 24, 1825. On December 13, 1825, the defendant wrote the following letter to the plaintiffs from Boston : — "I have very recently return ed from Europe. While in London on 25 October, I saw there your Michaelis, who informed me of the protested draft of James B. Clough, indorsed John Robinson & Co., on Crowder, Clough & Co., which was sold by you on my account at Havana. I made immediate arrangements with Mr. Bates, and he has long before this taken it up. My last draft on Samuel Williams I likewise provided for, before I left London ; all of which, before this reaches, you will no doubt be informed of ; therefore you will lose nothing by my negotiations. I shall not lose any thing by Williams ; and the indorsers of Clough's bills, John Robinson & Co. of Charleston, I am informed, are yet good. If you have received the protest and are satisfied that I have placed funds in London to meet your demand on this bill, you will please to forward the same to Dodd & Barnard for my account at Charleston (S. C.) in order that they may secure me as speedily as possible." This

letter the plaintiffs received January 10, 1826, and on January 12, 1826, sent the bill and protest to Dodd & Barnard ; and Dodd & Barnard acknowledged the receipt of them January 28, stating that they had made a demand on Robinson & Co., but without effect. The defendant sent two other letters to the plaintiffs, containing the following passages. " Boston, December 24, 1825. I wrote you a few days since. The present is to inform you, that I made such arrangements with your Mr. Michaelis at London, that I have no doubt that you will, before this reaches you, be informed by him, that all my drafts negotiated with you have been taken up or paid for my account. Should this be the case and you have the protest or drafts with the protest sent to you, you will please to have them forwarded to Messrs. Dodd & Barnard, to enable those gentlemen to secure for me the amount against the indorsers, John Robinson & Co., of that place : " — " Boston, 16 February, 1826. Your esteemed favors, 12th and 25th, have come to hand. I have received the bill from Messrs. Dodd & Barnard, and forwarded to Liverpool. The amount was placed in the hands of Mr. Joshua Bates, in London, in November last, and I have no doubt before this reaches you, he will have settled the same with your Mr. Michaelis at London."

Latham & Gair of Liverpool, in February or March, 1826, received the bill from the defendant, and proved the same in his name against the estates of Crowder, Clough & Co., the drawees, who stopped payment on or before the day when the bill was presented at their counting-house, and Latham & Gair received a dividend in his name. This claim was allowed on the ground, that the bill was originally given for value received by Crowder, Clough & Co. At the time of the trial, Latham & Gair still held the bill as belonging to the defendant and subject to his order.

Robinson & Co. failed after Crowder, Clough & Co., and probably as soon as news of that event reached them.

Weekly packets sail from Liverpool to · New York, and there are frequently other opportunities of forwarding letters to that place. The opportunities from Liverpool to Havana are · irregular, being about once and sometimes twice a month from October to May ; and from May to October, much less fre-

Martin
*v.*
Ingersoll

Martin
*v.*
Ingersoll.

quent; there sometimes being no means of conveyance for six weeks or two months. The opportunities for sending to Charleston are frequent from October to May, two or three a week; but from May to October much less frequent; there sometimes being none for six weeks. Government packets sail monthly from Falmouth for the West Indies, which carry regular mails. They usually sail on the second Tuesday of each month, though this is sometimes altered; and this is the regular mode of sending notice from London to parties in the West Indies. Their passages are from forty to fifty days. The mode of sending notices from Liverpool to the West Indies is by transient vessels. Passages from Liverpool to Havana are on an average about forty days. The regular mode of sending notices from London to the United States, is by the Liverpool packets.

The counsel for the defendant gave in evidence a protest made at Charleston, January 28, 1826, for the non-payment of the bill by Robinson & Co., in which it is stated that the bill was presented there by the notary at the request of Dodd & Barnard, and that Robinson & Co. refused payment, alleging that the bill had not been protested for non-acceptance, or that they had not been notified of it; and that if the bill had been sent in due time after it was drawn, it would have been accepted and paid by the drawees. To this protest is annexed a letter from Dodd & Barnard to the defendant, informing him of the refusal of Robinson & Co. to pay, and of their reasons; this letter the defendant received February 10, 1826.

Bates, a witness for the defendant, testified that he was a banker in London, residing there in October, 1825, and that at the latter part of that month he introduced Mr. Michaelis, the plaintiffs' agent, to the defendant; that the defendant and Michaelis then had some conversation together about the bill, both having previously conferred with him about it, and it was then agreed between them, that the defendant should take up and pay the bill without damages, " provided he could have it in proper order," the usual expression made use of on such occasions, to imply that nothing had been done or left undone to prejudice the party's right against the prior parties, or to

prevent his having recourse upon them, and to deny any intention of waiving any right of exemption which might exist ; that at this time they had no reason to suspect that there had been any neglect in notifying the parties to the bill ; that on the 16th of November he received orders from the defendant to pay the bill, provided he, the defendant, could do it and preserve his recourse against the indorsers ; and that, pursuant to these orders, he called on Goldschmidt & Co., but they could not find the bill ; and he left word, that if they would send it, he would pay it ; but soon afterward fearing that Goldschmidt & Co. were about to fail, he did not apply again, and in the spring the defendant drew for his money.

A witness for the plaintiffs proved that it is the custom of Cuba to observe the Christmas holydays in such manner that very little business is done.   The landing of some articles is permitted, but vessels are not allowed to clear out from the 25th of December to the 6th of January.   The merchants during the holydays transact all other business.

The jury, under the direction of the court, found a verdict for the plaintiffs, and the defendant moved for a new trial.

*Welsh*, for the defendant.   The defendant was not duly notified of the non-acceptance of this bill, his liability is therefore discharged.   *Turner* v. *Leech*, 4 Barn. & Ald. 450.  Besides, there is no evidence that even the letter of Goldschmidt & Co. of August 30, to the plaintiffs, although then too late for a notice of non-acceptance, was seasonably sent.  *Lenox* v. *Leverett*, 10 Mass. R. 1 ; Chitty on Bills, 138.  The defendant has neither promised to pay this bill, nor waived his right to regular notice.   The conversation in London, in which he undertook to take up the bill, was founded on the supposition that every thing had been properly done in order to charge him.   The letters which he subsequently wrote to the plaintiffs rested on the same supposition.   The defendant did not have a full knowledge of the facts ; which is necessary in order to make a waiver of notice binding.   *Miller* v. *Hackley*, 5 Johns. R. 375 ; *Duryee* v. *Dennison*, 5 Johns. R. 248.  His sending the bill to Liverpool to be collected of the drawees' estate was a measure of precaution, and ought not to deprive him of his rights.   The notice to the defendant in London

1 *                    5

*Marginal notes:*

Martin
v.
Ingersoll.

March 28th.
1828.

6

Martin
v.
Ingersoll.

March 16th,
1829.

could not avail the plaintiffs ; they should have sent notice to Boston or Charleston.  *Colt* v. *Noble*, 5 Mass. R. 167.

*Loring*, for the plaintiffs, cited Bayley on Bills, 163 ; *Pierson* v. *Hooker*, 3 Johns. R. 68 ; *Duryee* v. *Dennison*, 5 Johns. R. 248 ; *Thornton* v. *Wynn*, 12 Wheat. 183.

PUTNAM J. delivered the opinion of the Court.  The general objection to the payment of this bill by the defendant to the plaintiffs is, that the holders of the bill have not given due notice of its dishonor.  At the time when it was presented for acceptance, Gower, Nephews & Co. were the holders, but although the drawees refused to accept, Goldschmidt & Co. accepted *supra* protest for the honor of the plaintiffs, who were indorsers next after the defendant.  If Gower, Nephews & Co. were satisfied with the acceptance *supra* protest, the bill, so far as they were concerned, was honored.  It then became the duty of Goldschmidt & Co., acceptors for the honor of the plaintiffs, to give notice to them of the dishonor.  If when the plaintiffs paid the bill they were under no legal obligations to pay, in consequence of the laches of Goldschmidt & Co., it was a payment in their own wrong, so far as it respected their remedy against the defendant, unless the defendant has waived all objections to his liability on that account.

We will consider whether the defendant has made such a waiver.  The bill was accepted by Goldschmidt & Co. *supra* protest for the honor of the plaintiffs, on the 26th of August, 1825.  It appears that Goldschmidt & Co. advised the plaintiffs of that fact by letter dated the 30th of August.  It was protested for non-payment at maturity, viz. October 12th, and Goldschmidt & Co. paid it and remitted it to the plaintiffs with their letter of advice and protest on the 13th, which were received by the plaintiffs on the 24th of December, 1825.  The defendant was in London on the 25th of October, 1825, and he acknowledges that he then had had notice of the protested draft, from the agent of the plaintiffs, who was then in London.  The defendant there had the means of ascertaining all the facts which materially affected his liability on the bill.  He returned to Boston, and on the 13th of December, 1825, wrote to the plaintiffs that he had made arrangements with Mr. Bates of

London to take up this draft ; — " Therefore you will lose nothing by my negotiations." He desired the plaintiffs to send the bill to Charleston to be collected of Robinson & Co., who were prior indorsers, for the account of the defendant, if the plaintiffs were satisfied that he had placed funds in London to meet the plaintiffs' demand on this bill. By the letter of December 24, 1825, he substantially repeats the same things. About two months after, viz. February 16, 1826, he acknowledges that he had received the bill and forwarded it to Liverpool ; repeating that he had placed funds in London to meet this bill ; which was after he had received information of the refusal of Robinson & Co. to pay. It further appears, that he afterwards presented the bill against the estates of Crowder, Clough & Co. the drawees, received a dividend, and now holds the bill ; which was originally drawn upon Crowder, Clough & Co. for value which they had received. Now under these circumstances, the presumption of law is, that the defendant promised to pay the bill, and made his arrangements accordingly, because he was liable as a prior indorser, and the regular proceedings had been pursued to enforce his liability.

The defendant now contends that there is no evidence to show that the notice of August 30, 1825, of the dishonor of the bill, and of the acceptance *supra* protest by Goldschmidt & Co. for the honor of the plaintiffs, was sent by the then next packet to the West Indies from Liverpool, to be forwarded to the plaintiffs, and so the plaintiffs paid in their own wrong. We are of opinion, that under the circumstances the burden rests upon the defendant to show that fact. This is a matter which might have been rendered certain by the witnesses in the Havana ; but from examination of their depositions it does not appear certainly when that letter of the 30th of August (only four days after the acceptance of Goldschmidt and Co. *supra* protest) was forwarded from England or received by the plaintiffs. That was a regular banking-house, and it would have been a very extraordinary neglect if they had not sent by the then next packet the letter which certainly was written in season. It happens that the advice of the nonpayment is proved to have been seasonably given and received. The defendant was in London, and had it in his power to as-

Martin
*v.*
Ingersoll.

**8**

certain the fact if there had been laches on the part of Gold schmidt & Co. He was satisfied and continued to be so, long after his return to the United States, and after the knowledge of the failure of his prior indorsers. He has treated the bill as his own ; he has claimed under the English commission, in his own name ; and he cannot put the plaintiffs *in statu quo.* We think, under this evidence, it is for the defendant to disprove the presumption which the law raises from it, that the regular notice was forwarded by Goldschmidt & Co. The acceptor for the honor of the indorser was under no obligation to notify any other party than the one to whom he intended to resort. The conduct of the defendant amounts to an admission that he was satisfied that the proper notice had been given, and he should show clearly that he has acted upon a mistake. In the absence of any such evidence, we think the defendant would be liable according to his repeated assurances to the plaintiffs.[1]

An objection was raised, that the plaintiffs did not seasonably notify the house of Robinson & Co. at Charleston ; but we are satisfied that no laches were proved on that account. The plaintiffs proceeded according to the usages at Havana, and were not responsible for the delays arising from the Christmas holydays. In two days after they received the letters which the defendant wrote to them from Boston, they sent notice to Charleston according to his directions. It was argued that they should have sent notice to him at Boston, of the dishonor of the bill ; and that the notice which their agent in London gave to him in that city was not sufficient. He had notice in fact as soon as the plaintiffs had. At any rate, after he returned to Boston and before he wrote his letters from thence to the plaintiffs engaging that they should not lose any thing by his negotiations, he had the means of knowing all the facts ; and if there had been any irregularity in regard to notice, which certainly is not to be presumed from the evidence before us, it was for the defendant to prove that he acted upon

---

[1] See Bayley on Bills, (2d Am. ed.) 299, 300 ; *Grosvenor v. Stone, post,* 79; *Konig* v. *Bayard,* 1 Peters's Sup. Ct. R. 262; *Jones* v. *Savage* 6 Wend. 658 ; *Lawrence* v. *Ralston,* 3 Bibb, 102 ; *Offit* v. *Vick,* Walker, 99

a misapprehension of the facts. As the evidence is presented to us, we are all of opinion that the plaintiffs are entitled to recover. The defendant must be defaulted.