CHARLES ST. CLAIR *vs.* TRUSTEES OF BOSTON UNIVERSITY.

No. 87-286.

Suffolk.   February 10, 1988. — April 21, 1988.

Present: GRANT, PERRETTA, & FINE, JJ.

*Unlawful Interference. Libel and Slander. Charity. Practice, Civil,* Amendment, Variance.

The court held that G. L. c. 231, § 85, limiting the liability of charitable corporations, was applicable to tort recoveries based on intentional, reckless, or wanton, as well as negligent, acts, with the result that the judge at a civil trial correctly allowed a charitable corporation's motion to reduce the jury's verdict in the plaintiff's favor to $20,000 on a claim of intentional interference with advantageous relations. [667-668]

The judge in a civil case did not abuse his discretion in allowing the plaintiff's motion to amend the complaint to conform to the proof where there was no showing that the defendant was prejudiced and where the case had been fully and fairly tried on the real issues of fact. [669-670]

CIVIL ACTION commenced in the Superior Court Department on January 21, 1983.

The case was tried before *Francis J. Quirico,* J.

*Warren J. O'Brien* for the plaintiff.

*David M. Hartigan* for the defendant.

FINE, J. The plaintiff, Charles St. Clair, brought suit against Boston University, alleging wrongful conduct related to the circumstances of his discharge from employment. He listed numerous theories of tort and contract liability in his complaint, which he amended from time to time. The case went to trial before a jury in the Superior Court. The jury, in answer to special questions, awarded the plaintiff $75,000 damages for slander and another $75,000 damages for intentional interference with advantageous relations. Both awards were based upon a conversation St. Clair's superior at Boston University had in the summer of 1983 with a prospective employer of St.

Clair in which the superior stated that St. Clair was dishonest with money. After a hearing on posttrial motions filed by Boston University, the judge who had presided over the trial ruled that, notwithstanding the two separate theories of liability, St. Clair was entitled to only one recovery. In addition, he ruled that the charitable immunity statute, G.L. c. 231, § 85K, required that the one recovery be limited to $20,000.

St. Clair appealed, contesting the judge's ruling on damages. Boston University cross appealed, contesting St. Clair's right to any recovery. We affirm the judgment in all respects.

*The Factual Background.*

We summarize the relevant evidence presented at trial, reviewed, because of the jury verdicts in favor of the plaintiff, in a light most favorable to him. St. Clair was employed in 1980 by Boston University, a charitable corporation,[1] to supervise security in the university's dormitories and student mailroom. His gross monthly pay was approximately $1,528. In 1981, Robert Blomquist became St. Clair's superior as manager of residential security. St. Clair was not scheduled to work during July or August of 1981, and he was not expecting to be paid for that period. Because appropriate forms were not filed by St. Clair's superiors, a paycheck in the amount of $887 for July, 1981, was sent to the home of St. Clair's parents in New Hampshire. St. Clair actually resided in Brookline, Massachusetts, and, at the time the check arrived, he was away on an extended vacation. St. Clair's mother endorsed the check with St. Clair's name and deposited it in St. Clair's account in Boston. St. Clair returned to work in September, and soon afterwards he was handed a paycheck for August. He realized the funds were not due him, and he promptly returned the check to Boston University. Unaware of the deposit in his bank account of the July check, St. Clair continued to write checks on the account, and he did not make reimbursement to Boston University. In March, 1982, St. Clair received a letter from Blomquist asking for a meeting to discuss "confidential

---

[1] The parties stipulated that Boston University was a charitable organization within the protection of G. L. c. 231, § 85K.

matters." At the meeting with Blomquist there was mention of a problem relating to money paid by the university to St. Clair but not due him. Another meeting followed with Blomquist and another superior during which St. Clair was confronted with the July paycheck. He stated that he had been unaware of it, that the endorsement was his mother's, and that he had assumed that the source of extra funds in his account was an uncle's estate. Shortly thereafter, on April 23, 1982, St. Clair received a termination letter citing his failure to report the receipt of the July, 1981, paycheck.

St. Clair had difficulty for some time finding other employment. In 1983 he applied for a security position with a Pier One Imports store. Carl Rohacek, manager of the Pier One Imports store, called Boston University's personnel department for a reference. He was told to speak with Blomquist. When Rohacek reached Blomquist, his first response to a request for information about St. Clair was laughter; then Blomquist said St. Clair has a problem of "dishonesty concerning money." Immediately after the conversation, Rohacek decided not to hire St. Clair for the job with Pier One Imports, and St. Clair remained out of work for some time thereafter.

*The Verdicts and Posttrial Rulings.*

After denying Boston University's motions for directed verdicts, the judge submitted special questions to the jury in response to which they found that Blomquist, with authority from Boston University, did tell Rohacek, falsely, that St. Clair was dishonest with money. Based upon that statement, the jury found that the counts for both slander and intentional interference with advantageous relations had been proved. A $75,000 recovery was awarded to St. Clair on each count. Thereafter, the plaintiff moved for judgment in accordance with the verdict. The defendant moved for either a judgment notwithstanding the verdict or a new trial. Alternatively, the defendant moved for reduction of damages. One of the grounds of the motions for new trial and for judgment notwithstanding the verdict was a claimed variance between the allegations in the plaintiff's complaint and the proof on which the verdicts were based. The judge ruled that there was no such variance but,

in any event, he allowed the plaintiff to amend his complaint to conform to the evidence at trial. He allowed Boston University's motion to reduce the damages to $20,000 in accordance with G. L. c. 231, § 85K. He ruled, further, that the plaintiff was not entitled to recover damages separately on the two legal theories underlying the answer to the special questions.

*St. Clair's Appeal.*

St. Clair contends on appeal that it was error for the judge to apply G. L. c. 231, § 85K, to reduce the damages to $20,000.[2] The statute was inapplicable to his claim, he contends, because the tort allegations were not based upon negligence but on intentional acts.[3] General Laws c. 231, § 85K, inserted by St. 1971, c. 785, § 1, provides that for any "cause of action based on tort brought against a [charitable] corporation" liability may not exceed $20,000.[4] The use of the word

---

[2] St. Clair makes no argument on appeal that it was error for the judge to rule that St. Clair was entitled to only one damage recovery notwithstanding the jury's finding of liability on two separate theories. Such an argument would not have succeeded. Both special verdicts related to the same statement made by Blomquist to Rohacek, and the only evidence of damages suffered by St. Clair after the statement was made related to his failure to obtain the position with Pier One Imports. To award damages under both theories necessarily would have been redundant. See *Simon* v. *Solomon,* 385 Mass. 91, 108-111 (1982).

[3] The jury actually found that Blomquist acted recklessly, not intentionally, with regard to the slander. The jury did find interference with advantageous relations to be intentional.

[4] The full text of the statute is as follows:

"It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs. Notwithstanding any other provision of this section, the liability of charitable corporations, the trustees of charitable trusts, and the members of charitable associations shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes."

"tort" suggests that the Legislature intended to include intentional torts within the protection of the statute's provision for limited liability. The Legislature, however, also enacted a directive for interpreting the statute, not part of the General Laws, which provides that "[n]othing in [G.L. c. 231, § 85K] shall be construed to enlarge any protection from tort liability afforded by the common law of the Commonwealth prior to the effective date of this act." St. 1971, c. 785, § 2. No case in Massachusetts has been brought to our attention by the parties, nor have we found any, ruling on the extent to which charitable organizations before 1971 had immunity from liability for intentional torts. We turn, therefore, to an examination of the relevant principles expressed in Massachusetts cases to determine whether, had the issue arisen before 1971, charitable corporations would have been afforded immunity for intentional acts of their employees.

Massachusetts was the first jurisdiction in the United States to adopt charitable immunity. *McDonald* v. *Massachusetts Gen. Hosp.*, 120 Mass. 432 (1876). The *McDonald* court granted immunity based on the trust fund approach. The theory was that a trust fund could not be depleted for purposes other than those envisioned by the trust fund's donor. An explanation of the trust fund approach was offered in *Farrigan* v. *Pevear*, 193 Mass. 147 (1906): "Among the reasons given for this exemption it has been said, that being a charitable institution rendering services to the public without pecuniary profit, if the property of the charity was depleted by the payment of damages its usefulness might be either impaired or wholly destroyed, the object of the founder or donors defeated, and charitable gifts discouraged . . . ." *Id.* at 149.

In *McDonald*, a charitable organization was granted immunity from tort liability for the negligent acts of its employees. During the ninety-five years which followed *McDonald* and preceded the enactment of G. L. c. 231, § 85K, the cases in which the Massachusetts courts repeatedly applied the charitable immunity doctrine involved conduct which was negligent. See, e.g., *Farrigan* v. *Pevear*, 193 Mass. at 147; *Roosen* v. *Peter Bent Brigham Hosp.*, 235 Mass. 66 (1920); *Reavey* v.

*Guild of St. Agnes*, 284 Mass. 300 (1933); *Bearse* v. *New England Deaconess Hosp.*, 321 Mass. 750 (1947); *Simpson* v. *Truesdale Hosp.*, 338 Mass. 787 (1958). There was one exception, however. In *Boxer* v. *Boston Symphony Orchestra, Inc.*, 342 Mass. 537, 538 (1961), charitable immunity prevented recovery for the "reckless, wilful or wanton misconduct" of an employee of a charity.

We believe that if a case involving a tort such as intentional interference with advantageous relations or slander uttered recklessly by an agent of a charitable organization had been presented in Massachusetts before 1971, charitable immunity would have applied.[5] We base this conclusion in part on the fact that the tortious conduct in at least one case decided by the Supreme Judicial Court applying charitable immunity went beyond mere negligence. We also base it on the fact that Massachusetts has applied the doctrine broadly and has rigorously followed the trust fund rationale. For example, exceptions to the doctrine which were adopted in other States were rejected in Massachusetts. Elsewhere charitable immunity was held not to apply to cases in which the charity failed to exercise reasonable care in selecting and retaining its employees. See, e.g., *Hearns* v. *Waterbury Hosp.*, 66 Conn. 98 (1895); *Hoke* v. *Glenn*, 167 N.C. 594 (1914). Massachusetts explicitly rejected this option in *Roosen* v. *Peter Bent Brigham Hosp.*, 235 Mass. at 70. The analysis used in *Roosen* is illustrative of the court's strict adherence to the trust fund theory. "There is no sound distinction in reason between the liability of a hospital for the negligence of its inferior agents and its liability for the carelessness of its managers. The conduct of both relates to the execution of the charity. . . . If the hospital is held responsible for [the managing officers'] acts of negligence [in selecting em-

---

[5] In most of the States recognizing charitable immunity which were called upon to rule on the doctrine's applicability to intentional torts, the immunity was held to apply. See *Allison* v. *Mennonite Publications Bd.*, 123 F. Supp. 23 (W.D. Pa. 1954); *Boardman* v. *Burlington*, 123 Conn. 646 (1938); *Perry* v. *House of Refuge*, 63 Md. 20 (1884); *Schultz* v. *Roman Catholic Archdiocese*, 95 N.J. 530 (1984) (but see the strong dissenting opinion at 549). In South Carolina, however, charitable immunity was not extended to intentional torts. See *Jeffcoat* v. *Caine*, 261 S.C. 75 (1973).

ployees], the funds devoted to the relief of suffering humanity must be diverted in the one instance to the same extent and manner as in the other to the payment of claims wholly foreign to the purposes of the public trust." *Ibid.* The view that the trust fund was inviolable also led Massachusetts to reject the rule that whether there is immunity should depend upon the status of the injured party. See *Foley* v. *Wesson Memorial Hosp.*, 246 Mass. 363 (1923). In *Foley*, Massachusetts failed to follow the lead provided by other States, see, e.g., *Weston's Administratrix* v. *Hospital of St. Vincent of Paul*, 131 Va. 587 (1921), which had held that, although a beneficiary of a charitable trust had waived his right to recover damages by availing himself of the charity's services, a "stranger" to the charity might recover damages. The *Foley* court refused to allow concerns with public policy to create an exception to charitable immunity which would require a diversion of the trust fund.[6]

There is no logical distinction, in terms of the trust fund theory, between an intentional tort and a negligent tort. The effect on the charity's funds is the same whether the agent's tort is negligent, reckless, wanton, or intentional. The plaintiff makes the point that intentional wrongdoing is more culpable than negligent misconduct. Even so, with liability of the charitable organization based upon the principle of respondeat superior, the charity itself, with whose funds the courts were concerned, may be no more culpable in one type of case than the other. Moreover, the employee, the party directly at fault, may be held liable to the person harmed for the full amount of his loss. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63-64 (1983).

There is no merit to St. Clair's contentions, which we deal with summarily, that G. L. c. 231, § 85K, is inapplicable for

---

[6] The one exception to the trust fund approach which was adopted in Massachusetts was that a charitable organization lost its immunity if the tortious act was committed in the course of commercial activity. See *Holder* v. *Massachusetts Horticultural Soc.*, 211 Mass. 370 (1912); *McKay* v. *Morgan Memorial Coop. Indus. & Stores, Inc.*, 272 Mass. 121 (1930). The commercial activity was viewed as "entirely disconnected" from the organization's charitable purposes. This unique exception was codified as part of G. L. c. 231, § 85K.

reasons other than the intentional nature of the conduct. The activity in which Blomquist was involved when he engaged in the tortious conduct was not commercial in nature, even if some revenue-producing activities may have taken place within the larger division of which Blomquist's department is a part. Compare *Boxer* v. *Boston Symphony Orchestra*, 342 Mass. at 540. Blomquist's response to inquiries of a prospective employer about a former security employee was sufficiently related to the educational work of the university to make it an "activity carried on to accomplish directly" the university's work, as required by G. L. c. 231, § 85K.

*Boston University's Appeal.*

Boston University's principal argument on appeal is that, contrary to the judge's posttrial ruling, the variance between what was alleged in the pleadings and what was proved at trial as the foundation for the jury's verdicts was fatal and that it was error, therefore, for the judge to allow the motion to amend the pleadings to conform to the proof. All the pleadings filed before trial referred to wrongful acts on April 23, 1982, and nothing in the pleadings indicated that any statement was made to Rohacek. The jury's verdicts were based exclusively upon the statement to Rohacek in the summer of 1983. The variance issue was raised at trial by Boston University in its motion for directed verdicts [7] and also in its posttrial motions.

Even after trial, and even in the face of opposition at trial, a judge has authority to allow a motion to amend a complaint to conform to the proof, and there is a bias in favor of his doing so in the absence of a showing of serious prejudice to the opposing party. Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974). See Smith & Zobel, Rules Practice § 15.7-15.8 (1974). A ruling on such a motion lies within the sound discretion of the trial judge. See *Cavanaugh* v. *Crocker*, 335 Mass. 765 (1957).

---

[7] Counsel for Boston University cannot be said to have been remiss in not objecting when the evidence from Rohacek came in. The evidence would in any event have been relevant to St. Clair's damages. We note, however, that no objection by Boston University to the special verdict questions, based upon Blomquist's statement to Rohacek, appears in the record.

There was no abuse of discretion here. A pretrial answer to one of Boston University's interrogatories at least suggested that false statements were made after April, 1982. The content of the statement to Rohacek was substantially the same as the alleged content of the April, 1982, statements referred to in the complaint as it was, from time to time, amended. Boston University's defense at trial was that the statement was substantially true. The only new issue raised by the evidence of the later conversation was whether Blomquist actually made the allegedly false statement to Rohacek. Blomquist in his testimony admitted having had a conversation at some time with someone from Pier One Imports. Boston University neither asked for a continuance to investigate the new information nor explained to the trial judge how the delay in knowing about Rohacek's testimony caused it to be prejudiced. The case was fully and fairly tried upon the real issues of fact. See *Mitchell v. Lonergan*, 285 Mass. 266, 271 (1934). Contrast *National Medical Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 579 (1984). Weighing the possible prejudice to Boston University against the materiality of the variance and the importance of having cases decided on the evidence presented at trial, we do not view the actions of the judge as unreasonable or arbitrary. See *Cantara* v. *Massachusetts Bay Transp. Authy.*, 3 Mass. App. Ct. 81, 87 (1975); *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 88 (1987). Contrast *Parkman Equip. Corp.* v. *S.A.S. Equip. Co.*, 14 Mass. App. Ct. 938, 940-941 (1982).

The other issues raised by Boston University on appeal also lack merit, and we deal with them summarily. There is sufficient evidence in the record relating to St. Clair's lost opportunity to be employed by Pier One Imports to support a total damage award of $20,000, if not the jury's $75,000 damage award. The evidence also supports the jury's answer that Blomquist was authorized by Boston University to respond to Rohacek's reference request regarding St. Clair, a former employee. We need not reach the issue raised under G. L. c. 231, § 91, in connection with the count for slander, as the $20,000

St. Clair *v.* Trustees of Boston University.

verdict may stand on the intentional interference with advantageous relations claim alone.

*Judgment affirmed.*