Hamlin, J.

BACKGROUND

Plaintiffs Myra Jimenez (“Jimenez”) and her sons brought this action against the defendants Carribean Cultural Center, Inc. (“CCC”), Straughter Associates, Inc. (“Straughter”) and Winston Morris (“Morris”) alleging damages resulting from negligence and loss of consortium. The case went to trial before a jury in the Superior Court. The jury, in answer to special questions, found that the CCC was liable to the plaintiffs and awarded Jimenez $375,000 and $1000 to each child plaintiff for loss of consortium. Prior to completion of the trial, the parties agreed to argue the applicability of the $20,000 liability cap found in G.L.c. 231, §85K to this court after the jury returned their verdicts on the negligence and loss of consortium claims, thereby waiving jury findings concerning §85K. For the following reasons, the defendant’s request to cap liability is ALLOWED.

DISCUSSION

The plaintiff relies on Phipps v. Aptucxet Post #5988 V.F.W. Building Assoc., and argues that the CCC was engaged in a primarily commercial activity and is not entitled to the protection of the damages cap detailed in G.L.c. 231, §85K. See 7 Mass.App.Ct. 928, 930 (1979). The CCC relies on Missett v. Cardinal Cushing High School, and asserts it is entitled to the damage cap provision under G.L.c. 231, §85K, since its activities are not entirely disconnected from its charitable purposes. See 43 Mass.App.Ct. 5, 11, rev. denied, 425 Mass. 1108 (1997).
“In pertinent part, §85K limits a charitable corporation’s liability to $20,000, if it commits a tort ‘in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.’ ” Missett, supra at 9-10 citing G.L.c. 231, §85K (holding “some” educational benefits resulting from students organizing a school dance is enough under §85K to conclude that the dance accomplished directly the charitable purposes of the school). Furthermore, the limitation does not apply if “the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.” Id.
An activity is “commercial” rather than “charitable” only if its objective is merely to generate revenue. Harlow v. Chin, 405 Mass. 697, 715 (1989). However, generating revenue alone does not mean that an activity is “primarily commercial.” Missett, supra at 11. In the context of §85K, an activity is “primarily commercial” only when it is “entirely disconnected” from the charity’s purposes. Id., citing Linkage Corp. v. Trustees of Boston Univ., 25 Mass. 1, 28 n.37, cert. denied, 118 S.Ct. 599 (1997); St Clair v. Trustees of Boston Univ., 25 Mass.App.Ct. 662, 668 n.6, rev. denied, 402 Mass. 1104 (1988); see also Proctor v. North Shore Community Arts Foundation, 47 Mass.App.Ct. 372, 377 (1999) (applying charitable immunity after finding that commercial activities of charitable, non-profit organization was incidental to its primary activities).
This court finds that the CCC is a charitable corporation within the meaning of §85K and that it was acting under its corporate powers when it held the Sunday night Reggae event. According to its Articles of Organization, the corporation has a charitable purpose of fostering awareness of the Caribbean cultural heritage in the Greater Boston Community. See Exhibit 17. The CCC further lists as its corporate purpose the instituting of social, athletic, and civic programs for its membership. Id. This court finds that the Sunday night Reggae event was not primarily commercial in nature, as it was not entirely disconnected from the defendant’s charitable purposes. Missett, supra, at 11. Although the dance event did generate substantial revenues, the CCC continued to foster and promote Carribean culture by playing Reggae music. According *118 to the Treasurer of CCC, Margaret Dixon, seventy to eighty percent of the total revenues of the organization came from the Sunday night events. Although a significant amount of the revenue generated from the Sunday functions went to pay the defendant’s overhead, the proceeds were also directed towards several charitable events furthering the charitable purposes of the center. In particular, the CCC used funds from the Sunday night events to support a cricket team, domino games, Thanksgiving dinners for the community, Christmas presents, Easter egg hunts, scholarship programs, and community use of the CCC’s facility for various functions. The main source of funding for each of these charitable events came from the revenue generated by the Sunday night dances.
Finally, this court finds that the Phipps case relied upon by the plaintiff is not dispositive. In affirming the trial judge’s denial of the defendant’s motion for a directed verdict, the court in Phipps held there was evidence that a jury could have found that “regular Saturday night dances generating eight-five to ninety percent of the defendant’s income, which was being used primarily to pay mortgage and overhead expenses, was a primarily commercial activity, and not directly related to the charity’s purpose.” Although the Sunday night Reggae functions were regularly held, generating a significant amount of revenue to pay overhead expenses, this court finds that the promotion of the Carribean culture through Reggae music and the significant amount of revenue directed towards other charitable events precludes a finding that the Sunday functions were primarily commercial. More significantly, the evidence presented does not suggest that the Sunday functions were “entirely disconnected” from the CCC’s charitable purposes. See Missett, supra at 11 (“cases in which courts have concluded that an activity is ‘primarily commercial’ have involved the operation of full-fledged businesses”).
Therefore, this court finds that G.L.c. 231, §85K limits the aggregate amount of the CCC’s liability to $20,000 for all of the plaintiffs’ claims arising out of the incident occurring on April 25 and 26, 1993. See Missett, supra at 12 n. 12 (limiting the aggregate amount of the defendant’s liability to $20,000 for all the plaintiffs claims, including claims of negligence and loss of consortium, arising out of a stabbing incident).

ORDER

It is therefore ORDERED that the defendant’s motion is ALLOWED and entry of judgment against the defendant is limited to the statutory cap set forth in G.L.c. 231, §85K.