Agostini, J.
The plaintiff, Jane Martin (Martin), alleges that she was sexually abused by the co-defendant, Robert E. Kelley (Kelley), a priest employed by the other co-defendant, the Roman Catholic Bishop of Worcester (the Diocese). She alleges that on numerous occasions between 1969 and 1974, Kelley, a priest at the Notre Dame Parish in Southbridge, sexually abused her.
Martin, who was between the ages of eight and fourteen at the time, was a parishioner at the church. In her complaint, Martin alleges that the Diocese should be held liable for its negligent hiring and supervision of Kelley (Count IV) and for its ratification of Kelley’s intentional acts (CountV). The Diocese now moves to strike portions of an affidavit of the plaintiffs counsel and exhibits annexed thereto. The Diocese also moves for partial summary judgment on Counts IV and V on the ground that its liability is limited by the doctrine of charitable immunity and G.L.c. 231, §85K. In addition, Martin moves for this court to delay its decision so that it can continue discovery. For the following reasons, the defendant’s motion to strike exhibits is allowed; the defendant’s motion to strike portions of the plaintiffs counsel’s affidavit is allowed in part and denied in part; the plaintiffs motion to continue discovery is denied; and the defendant’s motion for partial summary judgment is allowed.
Motion to Strike
The Diocese moves to strike certain portions of an affidavit submitted by Martin’s attorney and also several exhibits attached to the affidavit. Exhibit A consists of multiple copies of records relating to criminal charges against Kelley which took place in 1990 and 2003. This exhibit should be stricken since it is irrelevant to the charges against the Diocese. The criminal charges contained in Exhibit A relate to conduct committed against victims other than Martin and after Kelley’s alleged abuse of Martin. As such they are irrelevant to the allegations Martin is now making against the Bishop.
Exhibit D should also be stricken. This exhibit consists of an unsigned memorandum from the Department of Public Safely and unsigned statements purportedly taken from Jennifer Kraskouskas and Kelley by the Department of Public Safety and Michele D’Acri, a guidance counselor. The statements consist of allegations by Kraskouskas that Kelley molested her. In addition to the fact that these statements are hearsay, considering that the alleged abuse occurred *122 at least nine years after Kelley allegedly abused Martin, the statements are also irrelevant.
Exhibits F and G should also be stricken. Exhibit F consists of recent newspaper articles regarding child abuse within the Catholic Church but lacks any mention of the parties or allegations in this case. None of the articles is relevant to the issues at hand. Exhibit G consists of various web site articles also regarding child abuse within the Catholic church. Besides containing hearsay, none of the articles is relevant to the issue of whether Kelley posed a risk to children prior to or during the time Martin alleges he abused her and whether the Diocese knew of that risk.
Exhibit H is a document that Martin alleges was sent from the Vatican to the Worcester Diocese in 1962. The document purports to establish procedures in Canonical Courts for hearing and adjudicating accusations of solicitation by priests. This should also be stricken. Martin fails to provide any facts to support her claim that the document originated with the Vatican or that the Diocese actually received it. Furthermore, how the Catholic Church handled allegations of solicitation within its Canonical Courts is irrelevant to the issues here.
Exhibit I should also be stricken. This document, allegedly written by a cardinal of the Catholic Church and concerning “very grave sins” by clergy, was not written until 1991. As the document was not written until seventeen years after the alleged abuse of Martin ended, the document is irrelevant.
Exhibit N consists of numerous newspaper articles from 2004 that appeared on the internet concerning allegations of abuse by clergy members. Several of the articles detail charges made against priests in Iowa, New York, and Arizona. Besides the fact that none of the articles reference the Worcester Diocese, the articles contain hearsay. Considering the hearsay nature of the articles and the total lack of relevance to the issues before the court, the exhibit must be stricken.
The Diocese also moves to strike multiple paragraphs of Martin’s attorney’s affidavit.[2] In the affidavit, Martin’s counsel asserts that the Diocese has not produced certain documents despite his requests. The Diocese denies that such documents exist. Most of the paragraphs merely imply that the Diocese has these documents. As such, there is no reason to strike them from the record. In paragraph 12 of his affidavit however, Martin’s counsel asserts that he “believes in good faith” that the Diocese has intentionally withheld disclosure of such documents and has acted in bad faith with respect to its discovery obligations. The court must disregard affidavits made on information and belief as opposed to personal knowledge. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Since Martin’s counsel lacks personal knowledge as to this assertion, the paragraph must be stricken.
Martin’s Request for a Delay
Martin also requests that the court delay its decision on summary judgment until it can obtain a report on abuse allegations made against clergy in the Worcester Diocese. “A continuance is appropriate if the party opposing a summary judgment motion shows that it cannot, without further discovery, ‘present by affidavits facts essential to justify [its] opposition.’ ” Commonwealth v. Fall River Motor Sales, Inc.,. 409 Mass. 302, 307 (1991), quoting Mass.RCiv.P. 56(f). As discussed below, even if the report contained allegations made against Kelley prior to the abuse of Martin, and thus showed that the Diocese knew or should have known that Kelley posed a risk to Martin, such allegations would not be relevant to this motion since claims of negligent training and supervision are limited by the doctrine of charitable immunity and the charitable limitation expressed in G.L.c. 231, §85K. Thus, because the report would not be helpful or essential to this summary judgment motion, the request must be denied. See id. at 309.
Summary Judgment Motion
The burden is on the moving party for summary judgment to “show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 713-14 (1991). The burden on a moving party who does not have the burden of proof at trial may be satsfied either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential element of that parly’s case.” Kourouvacilis, 410 Mass, at 716.
Martin alleges that the Diocese negligently hired, trained, and supervised Kelley and that it ratified the intentional acts of Kelley by failing to investigate him and remove him from the parish when it knew or should have known that he posed a danger to Martin. The Diocese, a charitable institution, argues that it cannot be liable for any acts alleged by Martin that occurred before September 16, 1971, based on the doctrine of charitable immunity. Furthermore, it argues that liability for any acts on or after that date are limited to $20,000 by G.L.c. 231, §85K. Martin responds that charitable immunity and the statutory cap on damages are not applicable because the alleged acts were ultra vires to the charitable purpose of the Diocese. Martin incorrectly frames the issue as whether the sexual abuse of children is an activity carried on to further the Diocese’s charitable purpose. The issue, however, is whether the Diocese’s negligent hiring, training, and supervision of Kelley and its failure to investigate and remove him were beyond the Diocese’s charitable purpose such that the doctrine of charitable immunity and G.L.c. 231, §85K, do not apply.
*123 The doctrine of charitable immunity arose from the theory that a trust fund could not be depleted for purposes other than those envisioned by the trust fund’s donor and therefore, charities were immune from paying damages stemming from tort liability. English v. New England Medical Center, Inc., 405 Mass. 423, 424-25 (1989). Thus, a charitable corporation was absolutely immune from liability for torts committed in furtherance of its charitable purpose. See McKay v. Morgan Mem’l Co-Op Indus. & Stores, Inc., 272 Mass. 121, 123 (1930) (determining whether husiness conducted was to carry out charitable purpose as described in charter). The legislature modified the charitable immunity doctrine in 1971 by allowing tort damages against a charity up to $20,000 “if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.” G.L.c. 231, §85K. The statute did not have retroactive effect and liability for torts committed prior to the effective date of the statute continued to be barred by the doctrine of charitable immunity. See Ricker v. Northeastern Univ., 361 Mass. 169, 171-72 (1972).
It is well established that charitable immunity and the charitable limitation of damages apply to cases involving negligent hiring and retention. See Roosen v. Peter Bent Brigham Hosp., 235 Mass. 66, 72 (1920). Even if the Diocese negligently hired and maintained Kelley for the purposes of, as Martin alleges, acting in concert with a national scheme and conspiracy to cover up the abuse of its clergymen, the result would be the same. “Directly charitable activities,” as applied in case law and G.L.c. 231, §85K, “are meant to be contrasted with those activities whose thrust is commercial, rather than with all the other forms of activities that may in some sense be only indirectly charitable.” Missett v. Cardinal Cushing High Sch., 43 Mass.App.Ct. 5, 10 (1997). Thus, in an analysis of whether the doctrine of ultra vires applies because the tort was not committed in the course of directly accomplishing a charitable purpose, a court only focuses its attention on the commercial nature of the activity. See, e.g., Conners v. Northeast Hosp. Corp., 439 Mass. 469, 478-80 (2003); Carpenter v. Young Men’s Christian Ass’n, 324 Mass, 365, 371 (1949), McKay, 272 Mass, at 124. Martin has not claimed that any of the Diocese’s alleged ultra vires acts were commercial in nature.
The federal district court case cited by Martin does not reflect Massachusetts law. In Heinrich v. Sweet, 118 F.Sup.2d 73, 75, 87 (D.Mass. 2000), rev’d on other grounds, a juiy found the defendant doctor and his employer hospital liable for negligence and wrongful death in connection with experiments the doctor performed on patients. The court held that charitable immunity did not apply because the experiments were not a natural extension of the expressed charitable purpose of caring for the sick and the insane. Id. at 89. The court failed to analyze how this conclusion could be reconciled with the Massachusetts Appeals Court decision in St Clair v. Trustees of Boston Univ., 25 Mass.App.Ct. 662 (1988). There the court concluded that intentional torts were protected by G.L.c. 231, §85K. Id. at 665-66. Since intentional torts can never be in furtherance of a charitable purpose, the Appeals Court’s holding further supports this court’s conclusion that the ultra vires exception only applies in cases where the tort was committed during the course of primarily commercial activities. Thus because charitable immunity and G.L.c. 231, §85K, apply, the Diocese is immune from liability for all torts alleged to have been committed prior to September 16, 1971, and any liability it may have based on a tort committed on or after that date is limited to $20,000.
ORDER
For the foregoing reasons, it is hereby ORDERED that: (1) the defendant’s motion to strike Exhibits A, D, F, G, H, I, and N is ALLOWED, (2) the defendant’s motion to strike portions of plaintiffs counsel’s affidavit is ALLOWED in part and DENIED in part; (3) the plaintiffs request for a delay is DENIED; and the defendant’s motion for summary judgment is ALLOWED. Since there is no special assignment to this case, a pretrial conference shall be scheduled and held on September 6, 2004, and the case assigned to a trial list.

The Diocese moves to strike paragraphs 3-15 of Martin’s counsel’s affidavit.