NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1110

JOHN LEWIECKI & another[1]

vs.

PEPPER GROVE, LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Pepper Grove, LLC (Pepper Grove), appeals from a judgment of the Land Court declaring that the plaintiffs, John Lewiecki and Elizabeth Emerson, have established title by adverse possession to a defined "disputed area" of Pepper Grove's property and an easement by prescription over a trail (the northerly trail) that leads to Accord Pond.  Pepper Grove contends that the judge erred in allowing the plaintiffs to amend their complaint after trial to include a claim for a prescriptive easement over the northerly trail, and that the evidence, in any event, was insufficient to prove adverse

_____

[1] Elizabeth Emerson.

possession of the disputed area or an easement by prescription of the northerly trail.  We affirm.

Background.  The plaintiffs took title to 370 Gardner Street in Hingham on December 1, 1997, and since that time have resided there and raised their two sons, born in 1998 and 2001, at the home.  Some twenty-two years later, in December 2019, Pepper Grove purchased 282 Gardner Street, a 2.25-acre wooded lot, which abuts the plaintiffs' property to the west and Accord Pond to the north.  Almost immediately, conflict arose between the parties regarding the plaintiffs' use of an approximately 9,000 square foot area shown on a survey plan created by Peter G. Hoyt and attached to the first amended complaint (disputed area).  On December 31, 2019, the plaintiffs commenced this action seeking title by adverse possession to this disputed area.

The disputed area, as described by the judge, consisted of three sections:  one-third devoted to lawn, one-third devoted to trails leading off-site and to structures, "most notably a chicken coop and a wood pile," and one-third occupied by trees of various sizes.  Prior to trial, the plaintiffs were allowed to amend their complaint to add an easement by prescription claim over the disputed area.  We discuss additional amendments to the complaint and additional procedural history infra.

2

1.  The plaintiffs' use of the disputed area.  The judge found that immediately after their purchase of 370 Gardner Street in 1997, the plaintiffs installed a wire fence largely coinciding with the boundaries of the disputed area in order to contain their dog.  Portions of the fence remained through 2008 or 2009.

In 1998, the plaintiffs installed a "water feature" in the disputed area and it remained through 2017 when they removed it but kept in place the stones that had surrounded it.  The plaintiffs planted and maintained a lawn over approximately one-third of the disputed area for twenty-two years.  As for the portion of the disputed area containing trees, the plaintiffs trimmed the trees and brush to allow better visualization of their playing children; removed trees that were overhanging their house; and created and stored wood piles.  Emerson described it as a "constant process to keep back the brush. . . . [She] battled poison ivy the whole time."

The plaintiffs installed a fire pit in 2002 but removed it later when it was no longer used.  They held parties in their yard, including the disputed area; created a cemetery for their personal pets that they edged with stones; and planted a variety of plants and ornamental trees in the disputed area.  In 2013, the plaintiffs built a chicken coop just south of the water

3

feature and raised chickens in the disputed area.  It remained there until 2020 when it was moved in connection with this litigation.

There are three "trailheads" in the disputed area that lead to connecting trails in "the woods";[2] the most northerly trail leads to Accord Pond.  Emerson testified that she started working on the trails in early 1998, purposefully cutting back growth to make a trail to the pond.  Since 1998, the plaintiffs have frequently used the northerly trail for different purposes.  For instance, the plaintiffs walked their dogs over the northerly trail most days since they moved in.  Emerson continued to improve and maintain the trail until 2019 when the current dispute arose.

Since 1998, the plaintiffs have frequently used the northerly trail to carry their canoe to Accord Pond during the warmer months.  They stored the canoe in the disputed area by the entrance to the northerly trail.  The plaintiffs' older son, since the age of five, frequently used the northerly trail to access Accord Pond to fish and canoe, as often as every other

---

[2] The judge found that the plaintiffs failed to meet their burden of proof to establish a prescriptive easement of what the parties referred to as the "middle" trail and the "southern" trail.  The plaintiffs have not cross-appealed and the issue, therefore, is not before us.  See Athanasiou v. Selectmen of Westhampton, 92 Mass. App. Ct. 94, 94 n.3 (2017).

4

day in his high school years.  For several years, he and a friend also rode their dirt bikes over the trails a few times a week when the weather permitted.

On these facts, the judge concluded that the plaintiffs met their burden of proving they had acquired title by adverse possession to a substantial portion of the disputed area, reasoning that the plaintiffs had treated the disputed area as their own for more than twenty years and that their use had been open, notorious, and exclusive.  She concluded that the disputed area was clearly distinguishable from the adjacent woodlands.  The only exceptions, the judge opined, were an area north of the pet cemetery and an area south of the log and brush piles that, the judge concluded, were "not distinguishable from the surrounding untended woodlands."  She rejected the argument that the plaintiffs had not met their burden because several of the activities relied on had not continued for twenty years.  The judge reasoned that "[w]hile no one of those things may have been in place for twenty years, the use of the [d]isputed [a]rea for all of those things at one time or another extended beyond twenty years.  More proof was not required."

The judge also found that the plaintiffs had met their burden of proving a prescriptive easement over the northerly trail.  The judge noted that the northerly trail was "plainly

5

visible" at the view; the plaintiffs had used it regularly since 1997 to access Accord Pond, to walk their dogs, and to transport their canoe to Accord Pond, and a neighbor had observed the plaintiffs and their older son using the trail "quite often." The judge found that the plaintiffs' use had continued for twenty-two years, and was open, notorious, and adverse to the owner.

2. Posttrial proceedings. The judge scheduled a hearing to discuss the preparation of a plan consistent with her decision. In response to the plaintiffs' motion to approve an amended Hoyt plan, Pepper Grove, for the first time, argued that neither complaint contained a count asserting a prescriptive easement over the northerly trail, the issue was not raised until after the close of evidence, and, therefore, it constituted an unfair surprise. Pepper Grove also argued that a proper foundation had not been established for approval of the plan. Following a hearing, the judge noted on the docket that in response to Pepper Grove's unfair surprise argument, she had reviewed "proceedings in this matter (the joint case management conference, trial testimony, the view, and post-trial briefs) where the prescriptive easement claim was briefed, testified to, argued, and [was] a component of the view."

6

The judge directed the plaintiffs to file a motion to amend the complaint to comport with the evidence and in response to Pepper Grove's other arguments, indicated that the plaintiffs should submit a new plan showing a four-foot wide easement to Accord Pond, not the ten-foot wide easement shown on the proposed plan, and also ordered other revisions to the proposed plan. Ultimately, the judge allowed the motion to file a second amended complaint to conform to the evidence and approved the modified proposed plan after Pepper Grove declined to hire a surveyor to contest its accuracy. The judge denied Pepper Grove's motion to amend the judgment or, alternatively, for a new trial.[3]

Discussion. 1. The motion to amend the complaint to conform to the evidence. Pepper Grove's principal argument is that the plaintiffs' complaints did not include a count for a prescriptive easement over the northerly trail and the judge erred in allowing the plaintiffs to add such a claim after trial. Although we agree that the original pleadings did not contain a claim for a prescriptive easement over the northerly trail, we discern no abuse of discretion in the judge's decision

---

[3] Although Pepper Grove's notice of appeal includes an appeal from the order denying its postjudgment motion, it makes no separate argument on appeal as to that order and we do not address it further.

7

to allow the motion to conform to the evidence.  See St. Clair

v. Trustees of Boston Univ., 25 Mass. App. Ct. 662, 669 (1988)

(ruling on motion to amend complaint to conform to proof lies

within sound discretion of trial judge).  "Even after trial, and

even in the face of opposition at trial, a judge has authority

to allow a motion to amend a complaint to conform to the proof,

and there is a bias in favor of . . . doing so in the absence of

a showing of serious prejudice to the opposing party."  Id.

Here, at the pretrial view, the judge observed all of the

trails, including the northerly trail.  Pepper Grove's opening

statement discussed the trails as one of three distinct areas

the plaintiffs claimed to have acquired, and suggested that the

trails are indistinct and, alternatively, that the paths were

existing when the plaintiffs moved in and "use of an existing

path [could not] satisfy adverse possession under these

conditions."[4]

Testimony regarding use of the northerly trail was elicited

from the plaintiffs and their older son, and Pepper Grove cross

examined them.  Testimony from Emerson revealed that starting in

1998, she cleared the northerly trail, cut back vegetation, and

lined the edges of the path with rocks, creating clear passage

---

[4] Pepper Grove does not pursue this argument on appeal in any meaningful way.

8

to Accord Pond. Indeed, Pepper Grove's brief states "there was extensive testimony at the trial regarding 'trails' and 'trailheads.'" In addition, the plaintiffs' posttrial submissions asserted that the plaintiffs had "at minimum established a prescriptive easement over the [d]isputed [a]rea including without limitation the network of trails and trailheads to the pond" (emphasis added). They further asserted that the plaintiffs had "created and maintained trails to Accord Pond."

Most telling, perhaps, is that Pepper Grove's posttrial brief's opening statement described the plaintiffs' claims as adverse possession and prescriptive easement. The second sentence reads: "The area claimed on 382 Gardner Street can be broken down into three conditions; a small strip lawn, forest[,] and three existing paths." Pepper Grove did not argue in its posttrial brief that the plaintiffs had not included the paths in their complaint or that the issue of a prescriptive right over the paths had not been tried; rather, Pepper Grove made substantive arguments directed at the elements of the claims. Among other arguments, it urged that the evidence simply was insufficient to distinguish a specific path from the rest of the property and that the plaintiffs' conduct on the paths was indistinct -- not open and notorious -- and that it did not

9

occur for twenty years and could not provide actual or constructive notice to the true owner.

We have no difficulty concluding in these circumstances that "[t]he case was fully and fairly tried upon the real issues of fact," St. Clair, 25 Mass. App. Ct. at 670, and there was no abuse of discretion or error in allowing the motion to amend. Between the view, Pepper Grove's opening, the testimony, and the posttrial briefing, Pepper Grove was on notice that an easement by prescription over the trails, and specifically the northerly trail, was a contested issue. Its posttrial submission demonstrates that Pepper Grove understood that the plaintiffs sought rights over the northerly trail -- even if earlier submissions and testimony could be construed as equivocal on that issue. Finally, we discern no error in the judge's reliance, in conjunction with the plaintiffs' testimony, on what she observed at the view.

2. Adverse possession. Turning to the merits, the judge properly concluded that the plaintiffs met their burden of proving adverse possession of the portion of the disputed area that they had incorporated into their back yard. "Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." Lawrence v. Concord, 439 Mass.

10

416, 421 (2003), quoting <u>Kendall</u> v. <u>Selvaggio</u>, 413 Mass. 619, 621-622 (1992). "[W]e accept the judge's findings of fact as true unless they are clearly erroneous." <u>Kendall</u>, <u>supra</u> at 620. Particularly relevant here, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" (citation omitted). <u>Mancini</u> v. <u>Spagtacular, LLC</u>, 95 Mass. App. Ct. 836, 839 (2019).

As the judge noted, "the [adverse] possessor must use and enjoy the property continuously for the required period as the average owner would use it, without the consent of the true owner" (citation omitted). <u>Ottavia</u> v. <u>Savarese</u>, 338 Mass. 330, 333 (1959). This is true even of land incorporated into a suburban yard where typical use is often passive. See <u>Miller</u> v. <u>Abramson</u>, 95 Mass. App. Ct. 828, 834 (2019) (where "the evidence showed that the [plaintiffs] used the land precisely as the average owner of similar property would use it in a suburban neighborhood populated with single-family homes[,] . . . no error in the judge's conclusion that [the plaintiffs'] relatively passive use of the disputed land was sufficient to satisfy the elements of adverse possession").

11

Here, the plaintiffs enclosed the area for many years,[5] planted and maintained a substantial lawn, trimmed and removed trees, planted new trees and plants, installed a "water feature," installed a chicken coop, created a pet cemetery, created and stored stacked wood piles, and generally used the property for parties, playing games, and other activities.  The judge was able to view the property and found that most of the disputed area was "clearly distinguishable from the adjacent woodlands."  Indeed, the judge specifically rejected the adverse possession claim with regard to two portions of the disputed area that she concluded were not differentiated from surrounding, untended woodlands.  Her finding that the rest of the disputed area was different from the surrounding woodlands was not clearly erroneous.  See Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626, 629 & n.5 (2018) (no error where finding based on conflicting oral testimony, photographs admitted in evidence, and judge's view of locus).

We have said that:

"In the normal course of family life, a residential back or side yard may be used intensively in years when young, active children live on the property, but much more passively when the inhabitants are older, less mobile, or infirm.  Accordingly, the relevant question in this context

_____

[5] While we recognize that the fence did not remain in place for twenty years, the judge found that uses of the areas within the fenced area did persist for twenty years, and we infer that the existence of the fence assisted in defining the area of use.

12

> is not whether the use of land is equally intense for the entire twenty-year period, but whether the possessor has maintained dominion and control for that same amount of time."

Mancini, 95 Mass. App. Ct. at 842. The judge's finding that the majority of the disputed area remained under the dominion and control of the plaintiffs was not clearly erroneous. Talmo, 93 Mass. App. Ct. at 629 & n.5. Forays by a neighbor's dog to play with the plaintiffs' dog do not negate the long history of the plaintiffs' control of the area.

It is true that one section of the disputed area contained "trees of various sizes." Pepper Grove contends that the judge should have treated this portion as woodlands and, citing Senn v. Western Mass. Elec. Co., 18 Mass. App. Ct. 992, 993 (1984), should have required that it be fenced or cultivated. In the circumstances here, we agree that there was no error in declining to consider this area woodlands. The judge specifically found that the area was "clearly distinguishable" from the nearby untended woodlands. Our review of the photographs admitted at trial gives us no reason to question this finding. Moreover, while we held in Senn, supra, that an element of adverse possession of woodlands is that the woodland (a 56.2-acre parcel) be enclosed or reduced to cultivation, we have clarified that such a rule is

13

"but an application of the general rule to the circumstances presented by wild or uncultivated lands. That is to say, the nature of the occupancy and use must be such as to place the lawful owner on notice that another person is in occupancy of the land, under an apparent claim of right; in the circumstances of wild and unimproved land, a more pronounced occupation is needed to achieve that purpose."

Seas Pines Condominium III Ass'n v. Steffens, 61 Mass. App. Ct. 838, 848 (2004). We discern no error in the judge's implicit conclusion that the plaintiffs' use was sufficiently pronounced.

3. Easement by prescription over northerly trail. We also agree that the judge properly found that the plaintiffs met their burden of proving they have obtained an easement by prescription over the northerly trail. "As codified in G. L. c. 187, § 2, a claimant may be entitled to a prescriptive easement respecting the land of another if it is shown by clear proof of a use of the land in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted over a period of no less than twenty years." Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 43-44 (2007). The difference from adverse possession is, of course, that there is no exclusivity requirement for an easement by prescription. Id. at 44 n.9. Here, the judge took a view and found that the northerly trail was readily discernable even though it had not been tended to for over a year due to this litigation. Contrast id. at 45 (no prescriptive easement where use was not confined

14

to regular or specific path or route).  The judge credited the plaintiffs' testimony that they regularly used and maintained the northerly trail -- a distinct path -- to walk their dog and to access the pond for canoeing and fishing, and she credited testimony that a neighbor observed their regular use.  In these circumstances, there was no error in concluding that the plaintiffs' use was open, notorious, adverse, and continuous for over twenty years.[6]

Judgment affirmed.

Order denying motion to amend judgment or, alternatively, for a new trial affirmed.

By the Court (Blake, C.J., Ditkoff & D'Angelo, JJ.[7]),

Clerk

Entered:  January 7, 2025.

---

[6] We discern no due process violation in the posttrial submission of a plan conforming to the judge's decision.  Pepper Grove was given the opportunity to have its own surveyor review the plaintiffs' plan and, if the surveyors disagreed as to the location of the easement, the judge indicated she would "consider reopening the evidence to address the issue."  Pepper Grove later reported that it did not intend to hire a surveyor to contest the location of the prescriptive easement -- and it was only after receiving that notice that the judge granted the plaintiffs' motion to approve the amended plan and entered judgment.

[7] The panelists are listed in order of seniority.